**Edna MEDDERS**

v.

**GENERAL HEALTH, INC., et al.**

**Civ. A. No. 86–378–A.**

United States District Court,
M.D. Louisiana.

July 11, 1989.

Joseph R. Ballard and Frank E. Lamothe, III, Lamothe & Hamilton, New Orleans, La., and Neil H. Mixon, Baton Rouge, La., for plaintiff.

Felix R. Weill, Watson, Blanche, Wilson & Posner, Baton Rouge, La., for Mary Branch.

William C. Kaufman, III, Trial Atty., Seale, Smith & Phelps, Baton Rouge, La., for General Health, Inc.

William E. Willard, Powers & Vaughn, Baton Rouge, La., for Chicago Ins. Co.

ALVIN B. RUBIN, Circuit Judge, Sitting by Designation.

Third party plaintiff General Health, Inc. has moved for a summary judgment declaring that Chicago Insurance Company (CIS) will be liable to it for what it terms indemnity or contribution if General Health is found vicariously liable for the alleged malpractice of nurse Mary Branch, who was insured by CIS. CIS counters that, to the extent it is liable, its liability must be reduced because Branch had "other insurance." The court holds that General Health is entitled to a partial summary judgment on the liability of CIS, although not on the legal theory stated in the motion.

## I.

▪ Edna Medders sued nurse Mary Branch and General Health, Inc., operator of a hospital that employed Branch, under the Louisiana Medical Malpractice Act (LMMA), LSA–R.S. § 40:1299.41 *et seq.* Medders alleged that Branch had injured Medders' son Billy by negligently administering two intramuscular injections and that General Health was vicariously liable for the injury because Branch inflicted it within the scope of her employment. General Health in turn sued CIS, claiming that, because CIS insured Branch, the hospital is entitled to "indemnification or contribution" if it is found vicariously liable for her negligence. We note, however, that General Health does not claim that CIS is obligated to it for indemnity by contract or as a tortfeasor, or that CIS and General Health are joint tortfeasors or co-debtors, justifying a claim for contribution. Consequently, if Branch is found negligent and General Health is cast vicariously, it is she rather than CIS who will be liable to General Health for indemnity, and General Health's claim against CIS will be based on subrogation to her rights rather than directly on indemnity or contribution.

CIS has conceded that it may be liable to General Health by virtue of its contract with Branch, but asserts that Branch has "other insurance" triggering the following clause of its policy:

> OTHER INSURANCE: If the Insured has other insurance against a loss covered by this policy the Insurers shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the Declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

Specifically, CIS asserts that because Branch is covered by the LMMA, the Louisiana Patient's Compensation Fund is responsible for paying up to $400,000 in malpractice damages above a $100,000 recovery from Branch or other sources in any case involving her. This $400,000, in CIS's view, constitutes "other insurance" within the quoted policy provision. CIS further argues that because General Health is in turn covered by the LMMA, Branch has an additional $500,000 in "other insurance," $100,000 from General Health's own contribution, and $400,000 from the Patient's Compensation Fund. Adding Branch's $100,000 deductible to obtain a figure of $1,000,000, CIS concludes that, since its own policy covers Branch for $1,000,000, it will be liable for only one half of any damages Branch may be found to owe General Health.

## II.

▪ The first question we must address is whether, as CIS contends, Branch "has other insurance against a loss" because her employer has insurance, self-insurance, or statutory payments available in its own right. This court concludes that she does not. The plain words of the "other insurance" clause demonstrate that it applies only if "the insured" has other insurance, not if her employer has. To the extent, therefore, that CIS's computation of "other insurance" includes General Health's self-insurance or the potential contribution of the Fund because of General Health's liability, its claim lacks merit.

Turning to the arrangements Branch has made for herself, the $500,000 that CIS claims is "other insurance" is made up of two components: the $100,000 for which, according to statute, Branch may be held personally liable, and the $400,000 that Medders may be able to collect from the Louisiana Patient's Compensation Fund if her damages exceed $100,000. The initial $100,000 cannot constitute "other insurance," however, because that is the sum for which CIS itself has insured Branch.

▪ The sole remaining issue, therefore, is whether the $400,000 maximum amount which the Louisiana Patient's Compensation Fund might be required to pay constitutes "other insurance." The court concludes that it does not.

"Other insurance" clauses typically "are designed to limit liability if the insured event is also covered by another insurance

policy," [1] and an insurer employing a "pro-rata" clause such as the one at issue here "purports to limit its liability to a proportionate percentage of all insurance covering the insured event." [2] Thus pro-rata "other insurance" clauses distribute liability between two or more sources of funds that are payable to cover the same insured event, which the CIS policy specifies as a "loss covered by this policy" rather than an incident of alleged malpractice such as Medders' injury. The payment of up to $400,000 by the Fund, however, does not cover Branch's possible $100,000 loss. It is payable only *after* Branch has paid her maximum $100,000 in damages,[3] and does not reduce her liability in any way. Consequently, the $400,000 potential payment is not "other insurance" had by Branch, and would not justify CIS in prorating its payment of the $100,000 for which Branch may be liable.

The Louisiana Patient's Compensation Fund is of course similar to private insurance in that it limits a health care provider's risk in exchange for payment of a contribution to the Fund. It thus provides a method of risk sharing among health providers. There, however, the similarities end. The Fund is not "insurance" as defined by the Louisiana Insurance Code because it is not a contract.[4] Moreover, the $400,000 is paid by a state agency, not by a private company, and the health care provider's payment buys not merely a pledge of reimbursement but also a cap on potential malpractice liability. Because of these differences, the court does not believe that Branch and CIS intended to treat payment from the Fund as "other insurance" when they made their contract. Therefore, both because of the definition of the event that triggers pro-ration and the differences between the Fund and insurance, the $400,000 payment that Medders may be able to collect from the Louisiana Patient's Compensation Fund does not constitute "other insurance" that Branch, as

the insured, has within the terms of her policy.

### III.

To the extent that General Health may be found vicariously liable for the malpractice of nurse Branch, its subrogation claim against CIS will not be subject to proportionate reduction for "other insurance." The clerk will enter partial summary judgment accordingly.

---

1. Van Knapp, Resolution of Conflicts, in Non-Automobile Liability Insurance Policies, Between Excess or Pro–Rata "Other Insurance" Clauses, 12 A.L.R.4th 993, 995 (1982).

