# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 10-1318

**DAVID O. BORDELON, ET AL.**

**VERSUS**

**GRAVITY DRAINAGE DISTRICT NO. 4 OF WARD 3 OF CALCASIEU PARISH, ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2006-4422
HONORABLE DAVID KENT SAVOIE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## SHANNON J. GREMILLION
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, Billy Howard Ezell, and Shannon J. Gremillion, Judges.

**AFFIRMED.**

Steven Broussard
Randall E. Hart
Attorneys at Law
1301 Common Street
Lake Charles, LA 70601
(337) 439-2450
Counsel for Plaintiffs/Appellees:
David O. Bordelon, et al.

Timothy George Schafer
Rachel S. Kellogg
Schafer & Schafer
328 Lafayette St.
New Orleans, LA 70130
(504) 522-0011
Counsel for Defendant/Appellant:
American Alternative Insurance Corp.
Robert E. Landry
Scofield, Gerard, Singletary & Pohorelsky

P.O. Drawer 3028
Lake Charles, LA 70602
(337) 433-9436
Counsel for Defendant/Appellant:
Gravity Drainage District No. 4 of Ward 3 of Calcasieu Parish

Edwin Henry Byrd  III
Pettiette, Armand, Dunkelman, Woodley, Byrd & Cromwell
P.O. Box 1786
Shreveport, LA 71166-1786
(318) 221-1800
Counsel for Defendant/Appellant:
Gravity Drainage District No. 4 of Ward 3 of Calcasieu Parish

Todd A. Townsley
Townsley Law Firm
3102 Enterprise Blvd.
Lake Charles, LA 70601
(337) 478-1400
Counsel for Plaintiffs/Appellees:
Carl Thibodeaux
Janet Postell
J. B. Postell
Douglas Shearman
Claire Shearman
Karen Thibodeaux

**GREMILLION, Judge.**

The defendants, Gravity Drainage District No. 4 of Ward 3 of Calcasieu Parish (the district) and American Alternative Insurance Corporation, appeal the jury verdict in favor of the plaintiffs, 24 homeowners whose properties are located within the drainage district. These homes experienced flooding in the wake of Hurricane Rita in September 2005, and plaintiffs claimed that the planning and delayed implementation of measures intended to cope with the hurricane resulted in the flooding. A jury decided in favor of plaintiffs and awarded them $1,570,219.60. The judgment recognized that American Alternative's liability was limited to its policy limits of $1 million. Plaintiffs have answered the appeal and asserted a number of errors. For the reasons that follow, we affirm.

## FACTS

Hurricane Rita made landfall on Friday, September 24, 2005. It had been projected as either a category 4 or 5 hurricane. On September 20, 2005, Governor Kathleen Blanco declared a state of emergency in an area that included Calcasieu Parish. The employees of the district were allowed to evacuate on Thursday, September 23, in anticipation of the hurricane's arrival. Among the district's drainage works are a large-diameter pipe connecting Pithon Coulee to Griffith Coulee in Lake Charles. This pipe can be closed by a pipe gate. At Pithon Coulee, the district maintains a high-capacity pumping station that can be used to drain both Griffith and Pithon Coulees (when the gate to Griffith is open). That pumping station has both electric- and diesel-powered pumps. The diesel-powered pumps must be turned on manually.

In July 2005, officials from the district met with members of the Governor's Office of Homeland Security and Emergency Preparedness (hereafter OEP) to discuss possible hurricane scenarios including evacuation points. The OEP did not

deem any Calcasieu Parish evacuation sites sufficient to withstand the forces of a category 4 or 5 hurricane. In the past, personnel had weathered storms in one of the pump houses, which were stocked with food, water, and cots; however, these were deemed insufficient to withstand the force of even a category 3 storm.

The district board met on Thursday, September 23, and decided to allow the employees to evacuate with their families that afternoon. They instructed the employees to return after sustained winds dropped to 35 to 40 miles per hour, in accordance with OEP recommendations. Before they evacuated, the employees left the Pithon-Griffith gate open and placed the electric pumps in automatic mode. Most of the employees then evacuated to Opelousas, Ville Platte, and Lafayette, Louisiana. The emergency contingencies the district implemented were made after consultation with OEP officials but were never formulated into a written plan.

A mandatory evacuation was ordered for all points south of Interstate 10 in Lake Charles on Thursday. The area at issue was within that mandatory evacuation zone.

By the time Rita made landfall, it had weakened to a category 3 storm. However, it did cause wide-spread electrical service outages, including the Pithon Coulee pumping station, which the evidence indicates lost power at approximately 9:00 p.m. Friday. Accordingly, the electric pumps could no longer operate, and no one was manning the diesel pumps to turn them on.

Mr. Mike Whittler, the district's supervisor since 1987, monitored television coverage of the storm from his evacuation site. Whittler determined from the live television feeds that conditions had not quieted to warrant placing district employees at risk by 11:00 a.m. Saturday.

On Saturday, many of the residents in the Pithon-Griffith area returned to their homes to find them above flood waters. However, many noticed that the

2

coulee waters were rising. There was disagreement among the experts as to when the flooding of the plaintiffs' homes occurred, but several of the homeowners, including those not party to this litigation, testified that their homes were not endangered by rising waters until as late as 3:00 p.m.

The district's personnel returned to Lake Charles in the early hours of Sunday, September 26. They activated the pumps at 8:30 a.m. and the water had lowered to below flood stage by noon.

Plaintiffs filed their petition for damages against the district in September 2006 and alleged the district was negligent in failing to foresee the need to activate the pumps, in failing to evacuate personnel to a location "some minimum distance from Lake Charles," failing to instruct employees to return immediately after conditions allowed, failing to provide key personnel with safe local shelter, failing to automate the diesel pumps, failing to keep the coulees properly dredged, and failing to train key personnel in other agencies in the operation of the systems in the event district employees were absent. The district answered and denied negligence. Additionally, the district pled the affirmative defenses of discretionary governmental immunity under La.R.S. 9:2798.1 and the specific immunity for emergency preparedness activities under the Louisiana Homeland Security and Emergency Assistance and Disaster Act, La.R.S. 29:721 et seq (the Act). The petition was later amended to add American Alternative as a defendant. Subsequent amendments added additional theories of liability on the district's part.

American Alternative filed a motion for summary judgment in which it asserted that the district was immune under the immunity statutes mentioned previously. The district joined American Alternative's motion. The trial court granted the motion as to the district's response in terms of implementing its plan, including evacuating the personnel from Lake Charles, but denied judgment on

whether the district should have automated its diesel pumps and whether it should have planned to evacuate personnel to a more immediate area and to return them to Lake Charles immediately after the storm had subsided.

The case proceeded to a jury trial. Following the conclusion of evidence and argument, the jury retired and returned with a verdict finding the district negligent in failing to have a plan in place prior to the storm in failing to automate its pumps. Both breaches were deemed by the jury to be causes in fact of the plaintiffs' damages. This appeal ensued.

## ASSIGNMENTS OF ERROR

The district assigns the following errors:

(1) It was error for the trial court to conclude that La. R.S. 29:735 immunity applied to claims regarding whether to evacuate, where to evacuate, when to return, and whether to obtain safe local shelter, but at the same time to conclude that such immunity was not applicable to a claim that defendant should have had a different plan not to evacuate, to return sooner, and to utilize local shelter. The court erred in denying defendant's motion for directed verdict on these claims, as there is immunity for planning decisions, and if not, no evidence that another plan would have prevented the flooding of plaintiffs' homes.

(2) The trial court erred in denying defendant's motion for directed verdict on discretionary immunity regarding evacuation and return decisions as well as claims that defendant should have constructed an unmanned or automated pumping station.

(3) Even if immunity were not required as a matter of law at the close of the evidence and there was a factual issue regarding same, it was error for the trial court to fail to submit to the jury whether evacuation and return decisions, as well as claims that defendant should have constructed an unmanned or automated pumping station, were rooted in social or economic policy such that discretionary function immunity was applicable.

(4) The jury charge regarding negligence failed to provide a duty risk analysis or that fault had to be a "substantial" factor in causing the harm alleged.

(5) The trial court erred in allowing the plaintiffs' expert, Dr. Philip Bedient, to express opinions concerning the abilities of the District's pumps, after Dr. Bedient admitted that he was not an expert in the field of pumping.

4

(6) To the extent necessary, defendant also adopts the issues presented and assignments of error of the defendant American Alternative Insurance Company.

American Alternative specified the following errors:

1. The Trial Court erred in allowing the plaintiff to maintain a negligence claim directed toward the District's evacuation planning, when it is clear that any claim regarding the decision to evacuate and/or the manner in which the evacuation was actually conducted are barred by La. R.S. 29:735.

2. The Jury's finding that the District was negligent with respect to its evacuation plan is unsupported by the evidence and should be reversed.

3. The Trial Court erred in failing to apply discretionary function immunity to bar negligence claims directed toward asset allocation issues such as pump automation and/or the procurement of a dredging barge and evacuation planning

4. The trial court erred in allowing the plaintiffs' expert, Dr. Philip Bedient to express opinions concerning the abilities of the District's pumps, after Dr. Bedient admitted that he was not an expert in the field of pumping.

The plaintiffs answered the appeal and asserted that the trial court erred:

1. In granting the defendants' motion for summary judgment because the district's conduct did not take place while it was attempting to comply with the Act, and in precluding evidence that the district's actions were willful, flagrant, outrageous, reckless, or otherwise excepted from immunity under the discretionary immunity statute.

2. In improperly refusing to allow evidence that the district has since automated its pumps after the district opened the door to allow such evidence during trial.

3. In refusing to allow them to "proffer into evidence" certain photographs necessary to impeach the testimony of a defense witness on the issue of the district's failure to dredge the coulees.

4. In not finding the failure to dredge the coulees to be a breach of duty nor a cause in fact of plaintiffs' damages.

5. In not allowing "the proffered examination of Mike Whittler into evidence."

6. By allowing defendants to proffer the deposition transcript of Ivor van Heerden because defendants failed to follow proper procedure.

5

7. By allowing the district's engineer, Walt Jessen, to testify after violating the rule of sequestration and violating an order entered pursuant to a motion in limine regarding events surrounding Hurricane Ike.

## ANALYSIS

The Act immunizes from liability the State and its political subdivisions "engaged in any homeland security and emergency preparedness activities while complying with or attempting to comply with" the Act or with rules and regulations promulgated pursuant to the Act. La.R.S. 29:735(A)(1). "Emergency preparedness" is defined as "the mitigation of, preparation for, response to, and the recovery from emergencies or disasters." La.R.S. 29:723(4). An "emergency" is an "actual or threatened condition which has been or may be created by a disaster," or "[a]ny natural or man-made event which results in an interruption in the delivery of utility services. . . and which affects the safety, health, or welfare of a Louisiana resident," or "[a]ny instance in which a utility's property is damaged and such damage creates a dangerous condition to the public," or "[a]ny national or state emergency, including acts of terrorism or a congressional authorization or presidential declaration pursuant to the War Powers Resolution." La.R.S. 29:723(3). Lastly,

> "Disaster" means the result of a natural or man-made event which causes loss of life, injury, and property damage, including but not limited to natural disasters such as hurricane, tornado, storm, flood, high winds. . . forest and marsh fires. . . nuclear power plant incidents, hazardous materials incidents, oil spills, explosion, civil disturbances, public calamity, acts of terrorism, hostile military action, and other events related thereto.

La.R.S. 29:723(2).

The ordinary rules of statutory construction are altered in any discussion of statutes conferring civil immunity. *Monteville v. Terrebonne Parish Consol. Gov't*, 567 So.2d 1097 (La.1990). The statutes are strictly interpreted, and where there is

6

any doubt about the meaning, courts adopt that interpretation which changes the law the least. *Id.* *See also Rodriguez v. Louisiana Medical Mut. Ins. Co.*, 618 So.2d 390 (La.1993).

The Act was passed in 1993. Since Hurricanes Katrina and Rita struck Louisiana, it has seen much development in terms of construction and application as suits involving the damage those storms wrought have winded their way through the courts. These cases have all interpreted the Act in accordance with the principles set forth in *Monteville*, 567 So.2d 1097. Among the cases that have interpreted the Act's grant of immunity is the unpublished decision of the Fifth Circuit Court of Appeal in *Chicago Property Interests, L.L.C. v. Broussard*, 08-1210 (La.App. 5 Cir. 3/6/09) (unpublished grant of writ), *writ denied*, 09-758 (La. 5/22/05), 9 So.3d 150.

Anticipating the landfall of Hurricane Katrina, Jefferson Parish President Aaron Broussard ordered the evacuation of 226 pump operators. Those pump operators evacuated with their pumps turned off. The following day, Katrina made landfall and widespread flooding engulfed large portions of Jefferson Parish. Chicago Property Interests, LLC and Zoe Aldigé filed a class action against Broussard, Jefferson Parish, and other defendants on behalf of all persons or entities residing in or owning property in Jefferson Parish who were damaged by flooding from Katrina.

The parish and co-defendant, Consolidated Drainage District No. 2, filed a motion for partial summary judgment asserting that they were immune from any liability for evacuating the pump operators and leaving the pumps off while the operators were evacuated. The plaintiffs then amended their petition to add claims based upon the negligent adoption in 1998 of a "doomsday policy" regarding

7

disaster response and for failing to properly educate key parish personnel on the provisions of the policy.

The motion was denied. The trial court reasoned that the grant of immunity was not "devoid of any temporal element." *Id.* at p. 4. Defendants sought writs from this denial, and the fifth circuit reversed the trial court in part.

The fifth circuit held that the defendants were immune from liability arising from actions taken during the emergency, including evacuating the pump operators and leaving the pumps turned off. However, the court held that they were not immune for claims based upon their alleged failure "to properly draft, implement, distribute, and/or review the 'doomsday policy,'" which had been adopted many years prior to the hurricane. *Id* at p. 7.

The trial court in the present case found this reasoning persuasive in reaching its decision on the motion for summary judgment filed by the district, and so do we.

The jury in the present matter found that the district breached its duty to the plaintiffs "in failing to have a plan in place prior to September 20, 2005" and "in failing to provide for the automatic operation of the Pithon Coulee pumps." These acts predated Hurricane Rita; accordingly, the district is not immune under the Act.

However, this does not end the analysis, because, in addition to the Act, the district can claim immunity under La.R.S. 9:2798.1, which reads, in pertinent part:

> B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.

> C. The provisions of Subsection B of this Section are not applicable:

> (1) To acts or omissions which are not reasonably related to the legitimate governmental objective for which the policymaking or discretionary power exists; or

8

(2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.

Whether discretionary immunity would attach to the failure to plan for contingencies that arose during Hurricane Katrina was not addressed by the court in *Chicago Property Interests*. Perhaps the seminal pronouncement on discretionary immunity was issued by the Louisiana Supreme Court in *Fowler v. Roberts*, 556 So.2d 1 (La.1989) (on rehearing). In *Fowler*, the supreme court held that discretionary immunity did not shield the Department of Public Safety's Office of Motor Vehicles for issuing a driver's license to an epileptic whose condition was not controlled by medication and who subsequently suffered a seizure while operating a motor vehicle and caused a crash.

The court's analysis noted that §2798.1 was patterned after a similar exception from governmental liability contained in the Federal Tort Claims Act. *See* 28 U.S.C. §2680(a). Under federal jurisprudence, a two-step inquiry is employed in determining whether the discretionary function exception applied: If a government employee had no choice but to adhere to a given course of conduct, he had no discretion, and the exception did not apply. Even if the employee had discretion, the court must then determine whether that discretion "is grounded in social, economic or political policy. If the action is not based on public policy, the government is liable for any negligence, because the exception insulates the government from liability only if the challenged action involves the permissible exercise of a policy judgment." *Fowler*, 556 So.2d at 15.

We find that the very nature of the complaint regarding planning involves discretion on the district's commissioners' part. They were accused of negligence in failing to plan for the evacuation of employees to locations less remote than

9

Lafayette, Opelousas, and Ville Platte. Where employees are to evacuate is a function of the nature of the emergency. As previously noted, Rita was projected to make landfall as a category 4 or 5 storm. There is no question that these strengths exceeded the rating of any of the public building in Calcasieu Parish. The decision to place the lives of the district's employees above concerns about the property in the district is clearly within the discretion of the district.

However, the jury also found the district negligent in failing to automate the diesel pumps. The parties stipulated that the cost of automating the pumps was approximately $40,000.00, that automating the pumps was technically feasible, and that the money was available to automate them. Automating the pumps was simply something the district had never considered.

Drainage districts are authorized by statute in Title 38 of the Louisiana Revised Statutes, Chapter 6. They are created by parish governing authorities or by petition of property owners. La.R.S. 38:1602, 1604. The purpose of a drainage district is to facilitate the drainage, protection, and reclamation of land within the district. La.R.S. 38:1638. The boards of commissioners of drainage districts are given broad powers to effect the drainage, protection, and reclamation. *Id.* In effecting the drainage, protection, and reclamation of the land in its district, "the drainage district shall make adequate provision for the drainage of all lands and property affected thereby." *Id.*

In other words, the primary function of the drainage district is to provide for drainage. They are mandated to make adequate provision for drainage. In *Fowler*, the issue was whether it was discretionary for employees of the Department of Motor Vehicles to request a certificate from Roberts' doctor indicating that he was capable of driving. The statute governing limitations on the licensure of disabled drivers, La.R.S. 32:403.2, provides that the department may waive the requirement

10

in the case of a person applying for a renewal of his license. This, the department argued, made the furnishing of the certificate discretionary. However, the department routinely waived the certificate. There was no discretion on the employees' part. Further, the department could not demonstrate that its failure to adopt a policy was grounded in economic, social, or political considerations.

In the present matter, the district can articulate no such considerations, either. Automating the pumps was a step the district had never considered. Despite the mandate that the district provide for adequate drainage, it failed to anticipate the contingency that when no one was available to turn on the pumps, flooding would ensue. Immunity does not attach.

Lastly, appellants argue that the plaintiffs' hydrology expert, Dr. Phillip Bedient, should not have been allowed to testify about the pumping capacity of the district's pumps. Dr. Bedient made it clear that his testimony was based on the pumps' manufacturer's specifications about their capacity. Experts are allowed to testify based upon information even if that information is not admissible. La.Code Evid. art. 703. Whether an expert's testimony may reveal such facts is determined by reference to Code of Evidence articles 403 and 705. *Id.* at comment (f). Under article 403, relevant "evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." We find none of these considerations present. Dr. Bedient's testimony about the pumping capacity was highly probative, and we find nothing unfairly prejudicial, confusing, or misleading in his testimony about that capacity.

Under La.Evid. Code art. 705, an expert in a civil case may testify in terms of opinion or inference and give his reasons without disclosing the facts or data upon which he bases it, unless he is required to by the court. If the expert fails to

11

disclose the factual underpinnings of his opinion on direct examination, he may still be compelled to on cross examination. *Id.* In the present case, Dr. Bedient did testify about the underpinnings of his opinions. The fact that he is not an expert in pumps does not disqualify him from testifying about pump capacity and the dynamics of fluids, a field in which Dr. Bedient has taught courses at the university level. This assignment of error is without merit.

Because we affirm the verdict in favor of plaintiffs/appellants, their assignments of error are rendered moot.

## CONCLUSION

A failure to plan for an emergency is not an emergency preparedness activity under the statutes conferring immunity for such activities. However, the decision of where to evacuate personnel is a discretionary act that does consider economic, political, and social factors and is subject to discretionary immunity under Louisiana Revised Statute 9:2798.1. The failure of the district to plan for contingencies should there be no one available to turn on the backup diesel pumps is neither an emergency preparedness activity nor a discretionary function, as there were no economic, political, or social factors even considered.

The verdict of the jury and judgment of the trial court are affirmed. All costs of this appeal in the amount of $3,577.00 are taxed to Appellants, Gravity Drainage District No. 4 of Ward 3 of Calcasieu Parish and American Alternative Insurance Company.

**AFFIRMED.**

12