Judge'Daniel L. Dysart | ¶Austin Earl appeals a judgment dismissing his suit against Marlin Gusman, Civil Sheriff of Orleans Parish, with prejudice. For the reasons that follow, we affirm the judgment of the trial court. Austin Earl was an inmate at the Orleans Parish Prison on Monday, August 29, 2005, when Hurricane Katrina made landfall in New Orleans. He was in jail on domestic violence charges. At the time of trial, he could not recall the length of his sentence or how long he had been in prison at the time of the hurricane.' Earl claims that as a result of negligence on the part of Sheriff Gusman, he was denied food, water and electricity for three days. Earl testified that he was housed on the second floor of the Templeman 2 facility with thirty-eight- other inmates. He.-.testified that for two days prior to evacuation, there were seventy-nine men on that floor. He stated that to evacuate, the inmates waded through water to a boat) and were then transported to the Broad Street overpass. He claims that he was there for two to three days, during which time there was no food or water available for the inmates. After two or three days 12on the overpass, buses arrived to take the inmates to other penal facilities upstate. He was released about six weeks later. Captain Sidney Holt testified for the defense. He is a 28-year employee of the Sheriffs Office and was present at the prison at the timé of Hurricane Katrina. He testified that the long-standing policy for hurricane preparedness was to shelter in place. Captain Holt was aware that the mayor of New Orleans had issued a mandatory evacuation of the city, but that the Sheriffs office was exempted. , Initially, it was believed that the storm was over, but when flood waters started rising, prison personnel'executed a vertical evacuation of prisoners on the first floors of the various jails, Templeman. 2, where Earl was housed,- was the first to have inmates removed from the jail. Holt verified Earl’s testimony that the inmates, were transported by boat on Tuesday to the Broad Street overpass, where they were later picked up by buses and transported out of the city. While he had no personal knowledge of whether Earl received food, he testified that he would be surprised to learn-that the inmate's did not have water. Following a bench trial, the court rendered judgment in favor of Sheriff Gus-man, dismissing Earl’s petition, with prejudice. In reasons for judgment, the court stated that it found the Sheriff to be'immune from Earl’s claims based on La. R.S. 9:2798.1, and, additionally, that any damages Earl may have suffered were a result of force majeure. The court found that Earl failed to produce any evidence indicating that Sheriff Gusman was negligent in preparing for the impending storm, or in the evacuation of inmates after. Further, the court found that Earl |.Jailed to establish that Sheriff Gusman was not entitled to the application of the doctrines of qualified immunity or force majeure. This appeal follows. DISCUSSION; Louisiana appellate courts review both law and facts. La. Const, art. 5, § 10(B). The applicable standard of review for a factual finding is the manifestly erroneous or clearly wrong standard. To reverse ■ a factfinder’s determination under this standard of review, an appellate court must undertake a two-part inquiry: (1) the court must find from the record that a reasonable factual basis does not exist for the finding of the trier of fact; and (2) the court must further determine the record establishes the finding is clearly wrong. Stobart v. State, Dep’t of Transp. and Development, 617 So.2d 880, 882 (La.1993). Ultimately, the issue to be resolved by the reviewing court is not. whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Id, If the factual findings are reasonable in light of the record reviewed in its entirety, á reviewing court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Id. at 882-883. Accordingly, where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous. Id. at 883. In his first assignment of error, Earl argues that, the trial court erred in finding no negligence on the part of Sheriff Gusman. He argues that the Sheriff had no plan to evacuate the prison or to provide food and water for prisoners. As I ¿evidence, he points to his own testimony that he was denied food and water for three days. Further, Dr. Richard Inglese, the medical director for Orleans Parish Prison, testified that “in some of the buildings there were extended periods of time when the inmates went without food and water.” The Sheriff argues that these facts were disputed by the testimony of Captain Holt that there was food and water available, and that he would be surprised to learn that Earl was not provided water for three days. Captain Holt also testified . that Earl’s building was the first to be evacuated to the overpass (Tuesday, August 30), and that water had been delivered by the National Guard. Captain Holt further testified that, as the prison had never flooded before, it was the custom to shelter in place for a hurricane.; Given the above evidence and considering the unprecedented and catastrophic aftermath of -the hurricane, the methods employed to safely care for and evacuate the prisoners were reasonable. We thus cannot say that the trial court was manifestly erroneous in finding that the actions taken by the Sheriff and .his staff were reasonable, especially in light of the circumstances. We thus find no error in the findings of the trial court. Earl also argues that the trial court erred in applying the doctrine of qualified immunity. Louisiana Revised Statute 9:2798.1, provides in part; B. Liability shall' not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties, . , IsEarl" cites to the two-part test established by the Louisiana Supreme Court in Simeon v. Doe, 618 So.2d 848, 852-53 (La. 1993), which provides that a court must first determine whether a statute,1 regulation, or policy requires the governmental agency to follow a particular course of action. If there is a requirement, then immunity does not apply. If there is a choice about what course to take, then immunity will only apply if the agency’s choice of action is grounded in “social, economic, or political policy.” Id. The second part of the test obliges the court to decide if the conduct in question occurred at the operational level. Earl argues that the Sheriff -offered no proof that the decision to shelter in place rather than evacuate pre-storm was a decision grounded in social, economic or political policy. He claims that the Sheriffs negligence in not evacuating pre-storm and in not having sufficient supplies for prisoners was a purely operational decision not protected by the qualified immunity of La. R.S. 9:2798.1. The Sheriff argues that Bordelon v. Gravity Drainage Dist. No. 4, 10-1318 (La. App. 3 Cir. 10/5/11), 74 So.3d 766, cited by Earl in his brief, in fact supports the actions of the Sheriff. In Bordelon, the Third Circuit found that the decision of whether or not to evacuate pumping station employees was the type of discretionary act envisioned by La. R.S. 9:2798.1. A separate decision not to upgrade the pumping systems to operate automatically in emergency situations was found to be operational negligence not protected by statute. In this case, the Sheriff notes that the mayor’s evacuation order explicitly exempted the Sheriff, his personnel and inmates from the order. Thus, any | (¡decision made by the Sheriff in regard to evacuation is clearly a political and economic consideration. The record establishes that there were over 6,000 inmates housed in the various buildings under the Sheriffs control at the time of the hurricane. It was not feasible to evacuate those inmates from facilities that, up until the time of Hurricane Katrina, were safe places to remain during a storm. We also note that the trial court made the determination that immediately following the storm, Earl did not have food, water or electricity. However, the trial court did not make the factual finding that Earl was without food and water for three days as he claims. Last, Earl argues that the trial court erred in applying the doctrine of force majeure sua sponte. Specifically, as the Sheriff did not specially plead the affirmative defense in its answer, it is waived. Fin & Feather, LLC v. Plaquemines Parish Gov’t., 16-0256, p. 6 (La.App. 4 Cir. 9/28/16), 202 So.3d 1028, 1033. Despite his contention that the application of the doctrine was waived, Earl argues that the situation created by Hurricane Katrina did not relieve the Sheriff of his duty to plan for evacuation and to provide food and water to the inmates. As such, the Sheriffs negligence was also a cause in fact of his injuries, and he should have been held responsible for damages. As we have already determined that the trial court did not err in finding the Sheriff free from fault, any application of the sua sponte application of the doctrine of force majeure is harmless error. 17Accordingly, for the reasons set forth above, we affirm the judgment of the trial court. AFFIRMED