NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2024 CA 0383
2024 CW 0241

GERALD THIBODEAUX, JR.

VERSUS

AMERICAN ALTERNATIVE INSURANCE CORPORATION, MUNICH
REINSURANCE AMERICA, INC., MARTY BOURG, AND TERREBONNE
PARISH CONSOLIDATED GOVERNMENT

Judgment Rendered: ___DEC 2 0 2024___

* * * * *

On Appeal from the
Thirty-Second Judicial District Court
In and for the Parish of Terrebonne
State of Louisiana
No. 194202, Division A

The Honorable Timothy C. Ellender, Jr. Judge Presiding

* * * * *

Brian J. Marceaux
Julius P. Hebert, Jr.
Derick A. Bercegeay
Brianna Wilson Orgeron
Houma, Louisiana

Attorneys for Defendants/Appellants
Marty Bourg and Terrebonne Parish
Consolidated Government


David M. Geerken
Luke C. Norris
Brent P. Frederick
New Orleans, Louisiana

Attorneys for Plaintiff/Appellee
Gerald Thibodeaux, Jr.

* * * * *

BEFORE: GUIDRY, C.J., PENZATO, AND STROMBERG, JJ.

**STROMBERG, J.**

In this tort suit, the defendants appeal the grant of the plaintiff's motion for partial summary judgment wherein the district court held that statutory emergency-preparedness immunity did not apply to this suit. The defendants also filed an application for supervisory writs from the denial of their motion for summary judgment seeking dismissal from the suit on the same basis of immunity. For the reasons that follow, we reverse the judgment granting the plaintiff's partial summary judgment motion, and we grant the defendants' writ application and reverse the denial of the defendants' summary judgment motion.

## FACTS AND PROCEDURAL HISTORY

On July 29, 2022, Gerald Thibodeaux, Jr. filed suit against the defendants, Marty Bourg and his employer, Terrebonne Parish Consolidated Government ("TPCG"), seeking damages arising out of an automobile accident that occurred around 6:37 a.m. on August 29, 2021.[1] According to the petition, Mr. Thibodeaux was a Terrebonne Parish Sheriff's Office employee who was working a Hurricane Ida evacuation detail. At the time of the accident, Mr. Thibodeaux was parked in a Sheriff's Office vehicle, with its emergency lights flashing, across both lanes of Louisiana State Highway 665 near milepost 8 in Terrebonne Parish. Mr. Thibodeaux alleged that Mr. Bourg was driving a truck owned by TPCG and was not paying attention to the roadway when he collided with the Sheriff's Office vehicle driven by Mr. Thibodeaux. Mr. Thibodeaux further alleged that Mr. Bourg was in the course and scope of his employment with TPCG at the time of the collision. According to the petition, TPCG was vicariously liable for Mr. Bourg's acts; was at fault in its duty to establish and use procedures to prevent such acts; and was negligent in its hiring, training, supervision, and retention of Mr. Bourg.

---

[1] Mr. Thibodeaux also named as defendants American Alternative Insurance Corporation and Munich Reinsurance America, Inc., the insurers of TPCG.

2

The defendants, TPCG and Mr. Bourg (collectively "Terrebonne"), filed an answer and a first supplemental and amending answer asserting several affirmative defenses, one of which was immunity for personnel engaged in emergency-preparedness activities pursuant to La. R.S. 29:723 and 735. On November 9, 2023, Mr. Thibodeaux filed a motion for partial summary judgment seeking the dismissal of the defendants' affirmative defense of emergency-preparedness immunity under La. R.S. 29:723 and 29:735.[2] On January 9, 2024, Terrebonne filed a cross-motion for summary judgment seeking dismissal from the suit on the basis of emergency-preparedness immunity pursuant to La. R.S. 29:723 et. seq., specifically La. R.S. 29:735, and also pursuant to La. R.S. 9:2798.1. The district court held a hearing on the summary judgment motions on February 5, 2024, and granted Mr. Thibodeaux's motion for partial summary judgment and denied Terrebonne's motion for summary judgment, finding that emergency-preparedness immunity under La. R.S. 29:735 did not apply to Terrebonne. On February 22, 2024, the district court signed a judgment in accordance with its rulings, granting Mr. Thibodeaux's motion for partial summary judgment, denying Terrebonne's motion for summary judgment, and designating the judgment granting Mr. Thibodeaux's motion as a final judgment, "having made an express determination that there is no just reason for delay."[3]

---

[2] In his partial summary judgment motion, Mr. Thibodeaux also sought the dismissal of the defendants' affirmative defense of governmental immunity under the following additional statutes, which he alleged had no relevance in this case: La. R.S. 29:734 (price gouging), La. R.S. 13:5112 (award of costs and legal interest against state or political subdivisions), and La. R.S. 32:24 and 32:25 (authorized emergency response vehicles responding to emergency calls).

[3] A district court's designation of a judgment as final pursuant to La. C.C.P. art. 1915(B)(1) is not determinative. As an appellate court, we are obligated to determine whether the district court properly designated the judgment as final pursuant to La. C.C.P. art. 1915 and to recognize any lack of jurisdiction if it exists. **Mandeville Partnership v. A Luxury Transportation, LLC**, 2021-1450 (La. App. 1 Cir. 8/24/22), 348 So.3d 763, 769 n.9. In applying the factors set forth in **R.J. Messinger, Inc. v. Rosenblum**, 2004-1664 (La. 3/2/05), 894 So.2d 1113, 1122, we conclude that the district court properly designated the judgment as a final judgment for purposes of appeal.

3

Terrebonne filed a motion for appeal from the part of the judgment granting Mr. Thibodeaux's motion for partial summary judgment and an application for supervisory writs from the part of the judgment denying its motion for summary judgment. On May 20, 2024, this court referred the writ application to the panel to which the appeal in this matter was assigned. **Thibodeaux v. American Alternative Insurance Corp.**, 2024-0241 (La. App. 1 Cir. 5/20/24) (unpublished writ action). <u>See</u> **Waterworks District No. 1 of Desoto Parish v. Louisiana Department of Public Safety & Corrections**, 2016-0744 (La. App. 1 Cir. 2/17/17), 214 So.3d 1 n.1, <u>writ denied</u>, 2017-0470 (La. 5/12/17), 219 So.3d 1103.

## DISCUSSION
## STANDARD OF REVIEW

Appellate courts review the granting of a summary judgment *de novo* using the same criteria governing the district court's consideration of whether summary judgment is appropriate, *i.e.*, whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. <u>See</u> La. C.C.P. art. 966(A)(3); **Bayview Loan Servicing, LLC v. Holden**, 2023-1347 (La. App. 1 Cir. 6/7/24), 391 So.3d 751, 756, <u>writ denied</u>, 2024-01032 (La. 11/14/24), ___ So.3d ___.

The summary judgment procedure is expressly favored in the law and is designed to secure the just, speedy, and inexpensive determination of non-domestic civil actions. <u>See</u> La. C.C.P. art. 966(A)(2). The purpose of a motion for summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. **Hines v. Garrett**, 2004-0806 (La. 6/25/04), 876 So.2d 764, 769 (*per curiam*). After an adequate opportunity for discovery, summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). The only documents that

4

may be filed or referenced in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, certified copies of public documents or public records, certified copies of insurance policies, authentic acts, private acts duly acknowledged, promissory notes and assignments thereof, written stipulations, and admissions. La. C.C.P. art. 966(A)(4)(a).[4]

On a motion for summary judgment, the initial burden of proof rests with the mover. See La. C.C.P. art. 966(D)(1); **Bayview**, 391 So.3d at 756. If, however, the mover will not bear the burden of proof at trial on the matter that is before the court on the motion, the mover's burden on the motion does not require that all essential elements of the adverse party's claim, action, or defense be negated. Instead, after meeting its initial burden of showing that there are no genuine issues of material fact, the mover may point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, summary judgment shall be granted unless the adverse party can produce factual evidence sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. See La. C.C.P. art. 966(D)(1); **Bayview**, 391 So.3d at 756-57.

A claim of emergency-preparedness immunity under La. R.S. 29:735 is treated as an affirmative defense under Louisiana law. **Banks v. Parish of Jefferson**, 2008-27 (La. App. 5 Cir. 6/19/08), 990 So.2d 26, 30, writ denied, 2008-1625 (La. 10/24/08), 992 So.2d 1043. Thus, despite the plaintiff's burden at trial to prove the defendants' liability for the claims alleged, the defendants bear the burden of proving the applicability of the emergency-preparedness immunity provision to

---

[4] The motions for summary judgment in this case were filed and heard after the amendment of La. C.C.P. art. 966 by 2023 La. Acts No. 317, § 1 (eff. Aug. 1, 2023), and 2023 La. Acts No. 368, § 1 (eff. Aug. 1, 2023).

5

the plaintiff's claims. See **Monteville v. Terrebonne Parish Consolidated Government**, 567 So.2d 1097, 1106 (La. 1990); **Banks**, 990 So.3d at 30. Moreover, immunity statutes are strictly construed against the party claiming the immunity. **Monteville**, 567 So.2d at 1101.

## STATUTORY EMERGENCY-PREPAREDNESS IMMUNITY

The Louisiana Legislature promulgated the Louisiana Homeland Security and Emergency Assistance and Disaster Act, setting forth its purpose in pertinent part in La. R.S. 29:722(A) as follows:

> [b]ecause of the existing possibility of the occurrence of emergencies and disasters of unprecedented size and destructiveness resulting from ... natural or manmade causes, and in order to ensure that preparations of this state will be adequate to deal with such emergencies or disasters, and in order to detect, prevent, prepare for, investigate, respond to, or recover from these events, and generally to preserve the lives and property of the people of the state of Louisiana.

Under La. R.S. 29:723(4), "disaster" is defined in pertinent part as "the result of a natural or man-made event which causes loss of life, injury, and property damage, including but not limited to natural disasters such as hurricane." Further, "emergency" means, in pertinent part, "[t]he actual or threatened condition which has been or may be created by a disaster." La. R.S. 29:723(5)(a). "[E]mergency preparedness" encompasses "the mitigation of, preparation for, response to, and the recovery from emergencies or disasters. The term 'emergency preparedness' shall be synonymous with 'civil defense', 'emergency management', and other related programs of similar name." La. R.S. 29:723(6).

Regarding immunity, La. R.S. 29:735(A)(1) provides in pertinent part:

> Neither the state nor any political subdivision thereof, nor other state agencies, nor, except in case of willful misconduct, the employees or representatives of any of them engaged in any homeland security and emergency preparedness and recovery activities, while complying with or attempting to comply with this Chapter or any rule or regulation promulgated pursuant to the provisions of this Chapter shall be liable for the death of or any injury to persons or damage to property as a result of such activity.

Representatives and employees of the State, its agencies, or political subdivisions are also immune, except if they engage in willful misconduct in the course of preparing for a disaster or emergency. See **McQuirter v. State though Louisiana Department of Public Safety & Corrections Elayn Hunt Correctional Center**, 2020-1192 (La. 1/12/21), 308 So.3d 285, 285 (*per curiam*); **Noyel v. City of St. Gabriel**, 2015-1890 (La. App. 1 Cir. 9/1/16), 202 So.3d 1139, 1145, writ denied, 2016-1745 (La. 11/29/16), 213 So.3d 392.

## DISCUSSION

In its affirmative defenses, Terrebonne asserted that it was entitled to statutory immunity for injury or death resulting from emergency preparedness activities pursuant to La. R.S. 29:735(A)(1). Mr. Thibodeaux moved for a partial summary judgment contending that Terrebonne was not entitled to statutory emergency-preparedness immunity. According to Mr. Thibodeaux, because Mr. Bourg was instructed moments before the collision to return home from his job servicing pumps for TPCG in anticipation of the hurricane, he was no longer in the course and scope of his employment or engaged in emergency preparedness activity when the collision occurred. However, in Terrebonne's motion for summary judgment seeking dismissal from the suit based on statutory emergency-preparedness immunity, it contended that the defendants were engaged in emergency-preparedness activities at the time of the collision. Terrebonne pointed out that Mr. Bourg was also entitled to the statutory emergency-preparedness immunity because he was engaged in emergency preparedness and his actions did not constitute willful misconduct, such that he would be excluded from entitlement to statutory immunity.

At the conclusion of the summary judgment hearing, the district court, in its reasons for judgment, determined that the statutory emergency-preparedness immunity did not apply because Mr. Bourg was on his way home and, accordingly, was no longer bound by his employer and could "go and come as he pleased." The

district court added that had the collision occurred fifteen minutes or even a couple of seconds or minutes before, it might have concluded differently.

On appeal, Terrebonne urges three assignments of error. Terrebonne contends that the district court erred as a matter of law in finding that the activity which Mr. Bourg was engaged in, which was ascertaining that all pumps were functioning in anticipation of Hurricane Ida's arrival, did not constitute emergency preparedness under La. R.S. 29:721 *et seq.* Terrebonne next contends that the district court erred as a matter of law by finding that Mr. Bourg was not in the course and scope of his duties with TPCG at the time of the collision. Lastly, Terrebonne contends that the district court erred as a matter of law in holding that for immunity to apply, Mr. Bourg had to be in the course and scope of his employment because the law for emergency-preparedness immunity does not require emergency personnel to be in the course and scope of their employment.

In support of his motion for partial summary judgment and in opposition to Terrebonne's summary judgment motion, Mr. Thibodeaux attached his petition, Terrebonne's answer and supplemental answer, and excerpts from Mr. Bourg's deposition with exhibits (three daily operator check lists, a certified copy of the Terrebonne Parish State of Emergency Declaration, and excerpts from the TPCG e-safety handbook).

In support of its summary judgment motion and in opposition to Mr. Thibodeaux's summary judgment motion, Terrebonne attached to its memoranda the same items Mr. Thibodeaux had attached and, in addition, Mr. Bourg's complete deposition with additional exhibits, photographs of the vehicles, an uncertified copy of the State of Louisiana State of Emergency Declaration-Tropical Storm Ida, Barney Crochet's affidavit, and a Sheriff's Office letter.[5] Terrebonne also attached

---

[5] In his memorandum in opposition to Terrebonne's summary judgment motion, Mr. Thibodeaux objected to several exhibits attached to Terrebonne's summary judgment motion, but he did not object to those same exhibits when they were attached to Terrebonne's memorandum in opposition

Mr. Bourg's affidavit to its opposition to Mr. Thibodeaux's summary judgment motion.

In support of its summary judgment motion and in opposition to Mr. Thibodeaux's motion, Terrebonne also attached to Mr. Bourg's deposition a certified copy of the executive order issued by the Parish President of Terrebonne Parish on August 26, 2021, declaring a parish-wide state of emergency pursuant to La. R.S. 29:721 for the approaching Hurricane Ida until further notice.[6]

Terrebonne also submitted the affidavit of Barney Crochet, who was employed by TPCG as Operations Supervisor in the Drainage Department and who supervised Mr. Bourg. Mr. Crochet stated that on August 29, 2021, TPCG was

---

to his summary judgment motion. Louisiana Code of Civil Procedure article 966(D)(2) states that the district court "shall consider only those documents filed or referenced in support of or in opposition to the motion for summary judgment but shall not consider any document that is excluded pursuant to a timely filed objection." Louisiana Code of Civil Procedure article 966(D)(2) also states that the district court "shall consider all objections prior to rendering judgment. The court shall specifically state on the record or in writing whether the court sustains or overrules the objections raised."

At the summary judgment hearing the district court stated that the evidence submitted in support of and in opposition to the summary judgments was identical for both sides, which was not entirely accurate as Terrebonne submitted Mr. Bourg's complete deposition. The court also said there was no objection to any exhibits on the summary judgment motions and "all" were "submitted." The district court asked if it was "fair to say" that there was no genuine issue of material fact, and both counsel agreed. Given the inconsistency as to the objections, we will consider the exhibits as not objected to. See **Lacassin v. Department of Wildlife and Fisheries**, 2023-1052 (La. App. 1 Cir. 6/4/24), 391 So.3d 731, 734, writ denied, 2024-00874 (La. 10/23/24), 395 So.3d 252. Neither party raises any issue as to the objections on appeal.

In our review of the motion for summary judgment, this court shall consider any documents to which no objection is made to determine, *de novo*, if we should give any evidentiary value to the document. **Hebert v. St. Mary Parish**, 2023-1099 (La. App. 1 Cir. 4/19/24), 390 So.3d 388, 393, writ denied, 2024-00642 (La. 9/24/24), 392 So.3d 1145. In reviewing the documents, we will give no evidentiary value to the photographs and the sheriff's office letter that Terrebonne submitted as they are not listed as proper summary judgment documents under La. C.C.P. art. 966(A)(4)(a) and were not properly authenticated by an affidavit or deposition to which they were attached. See **Chet Morrison Contractors, L.L.C. v. Spartan Directional, LLC**, 2023-0981 (La. App. 1 Cir. 6/14/24), 391 So.3d 1103, 1112 n.9; **Velocity Investments, LLC v. Pasqua**, 2022-0626 (La. App. 1 Cir. 1/10/23), 361 So.3d 23, 27 n.6.

[6] Also attached to Terrebonne's summary judgment motion and its opposition was an uncertified copy of the governor's proclamation of a state of emergency for then tropical storm Ida issued on August 26, 2021, and effective until September 27, 2021, unless terminated sooner. While La. C.C.P. art. 966(A)(4)(a) requires that public documents filed with or referred to in support of or in opposition to a summary judgment motion be certified, La. C.E. art. 202(B)(1)(a) states that a court shall take judicial notice of a proclamation of the governor of the state if a party requests it and provides the court with the information needed by it to comply with the request. Nevertheless, whether this uncertified document has evidentiary value to show the existence of a state of emergency is inconsequential because both parties filed a certified copy of the Terrebonne Parish State of Emergency Declaration with their motions.

9

working under emergency declarations issued by the governor and Parish President. According to Mr. Crochet, on that day, in preparation for Hurricane Ida, he was instructed by "Administration" to send pump attendants, including Mr. Bourg, to inspect pumps. Mr. Crochet stated that he gave each pump attendant he called that day a "hot list," which included the pumps they were to service. Mr. Crochet also stated that a pump attendant was paid hazard pay when working during a state of emergency and that the pump attendant was paid from the time he left his house until the time he returned home.

In his deposition, Mr. Bourg testified that at the time of the collision on August 29, 2021, he was employed as a pump attendant with TPCG. He stated that his job duties included preparing and making sure all pumps were in running condition for bad weather. On August 29, 2021, his supervisor, Mr. Crochet, called him at home at approximately 4:00 a.m. to give him a "hot list" of the pumps to service. To drive to the pumps, Mr. Bourg used a TPCG truck with the yellow vehicular light on the roof turned on. Mr. Bourg testified that before the collision, he had serviced two pumps, and, at the time of the collision, he was driving to pump DO1, another pump which he was ordered to service that was located about a quarter of a mile away. He testified that he never made it to pump DO1 because his supervisor, Mr. Crochet, called him and told him to "turn around and go home" because "the hurricane was getting ready to come" and "the weather was getting bad."

Regarding the collision, Mr. Bourg testified as follows:

Q. [A]nd you did not go service [DO1] that day?
A. No. I didn't because I was told to turn around and go home.
...
Q. ... They told you go get off the road and go where? Where did you go after that?
A. Home.
Q. And when did they call you? ... They called you to get off the road prior to the collision?
A. Right prior to the collision.
Q. And so, right prior to the collision, you're no longer heading to DO1? You're heading home?

10

A. At that moment, I was heading to the driveway to turn around to go home.
Q. So you were heading home?
A. After I turned around, yes.
...
Q. ... [W]hen was the first time you saw Mr. Thibodeaux's vehicle?
A. Maybe 10 to 15 seconds after I hit the hang-up button with my supervisor.
Q. And that was the call that told you to head home?
A. Yes.
Q. And the crash report here says that you looked down. Is that accurate to what happened? You looked down and you looked up and saw the vehicle there?
A. Yes. Yes.

When asked if he was paying attention immediately before the collision, Mr. Bourg answered, "I was called." He additionally testified that he was looking down "for a second to hit the hang-up button on my phone." Mr. Bourg later testified, "At the time of the accident, I was not heading home. I was going to a safe place to turn the vehicle around to head home." After the collision and after the state trooper told him and Mr. Thibodeaux they were free to go, he turned the truck around and headed home.

According to Mr. Bourg, when working in a state of emergency, such as in this situation, his day started when he left the house and ended when he returned home. Mr. Bourg testified that he would "usually pull on the shoulder to talk on the phone, but at that time, where I was, there was no shoulder." Under the state of emergency, he testified he could use his phone while operating a vehicle.

Our *de novo* review of the evidence presented in support of and in opposition to the summary judgment motions establishes that there are no genuine issues of material fact regarding whether, at the time of the collision, Mr. Bourg was in a parish-owned truck engaged in emergency-preparedness activities for TPCG during a declared state of emergency in his job as a pump attendant. After checking two pumps, Mr. Bourg was on his way to the third pump his supervisor had assigned him to check to prepare for the approaching hurricane, which was about a quarter of a

11

mile from the scene of the collision. Immediately before the collision, his supervisor phoned him to tell him to return home as the weather conditions were deteriorating due to the hurricane. Mr. Bourg momentarily looked down at his phone to end the call, and when he returned his eyes to the road, he saw Mr. Thibodeaux's vehicle and collided with it. The collision occurred after Mr. Bourg hung up the phone, but before he had found a safe place to turn around to drive home. These facts are not in dispute and pursuant to La. R.S. 22:735(A)(1), Terrebonne is entitled to emergency preparedness immunity under La. R.S. 22:735(A)(1). Moreover, Mr. Bourg is also entitled to immunity as there is no allegation that he engaged in willful misconduct.[7]

Mr. Thibodeaux contends and the district court stated in its reasons for judgment at the hearing that Mr. Bourg was on his way home when the collision occurred. However, when asked if he was heading home prior to the collision, Mr. Bourg stated twice that at the time of the collision he was not heading home, but he was headed to a driveway or safe space to turn around to go home. It was after the collision, when the state trooper told him he could go, that he turned the truck around to head home. Mr. Bourg's engagement in emergency preparedness did not end immediately before the collision when he hung up the phone after his supervisor called to tell him to return home; he was still traveling in the direction to check the pump and had yet to find a safe place to turn around to return home. The collision occurred during that time period, which was in the course of emergency preparedness.

While Mr. Bourg was not yet driving home when the collision occurred in this case, we do note that in **Rabee v. Louisiana Department of Public Safety &**

---

[7] Willful misconduct" pursuant to La. R.S. 29:735 is some voluntary, intentional breach of duty—which may be unlawful, dishonest, and/or improper—that is committed with bad intent or, at best, with wanton disregard for the consequences. **Noyel v. City of St. Gabriel**, 2015-1890 (La. App. 1 Cir. 9/1/16), 202 So.3d 1139, 1145, <u>writ denied</u>, 2016-1745 (La. 11/29/16), 213 So.3d 392.

**Corrections**, 2023-384 (La. App. 5 Cir. 11/2/23), 378 So.3d 71, 75, <u>writs denied</u>, 2023-01620 (La. 2/14/24), 379 So.3d 30, and 2023-01651 (La. 2/14/24), 379 So.3d 34, the Fifth Circuit stated that the rule that an employee traveling to or from work generally is not in the course and scope of employment for the purposes of vicarious liability under La. C.C. art. 2320 did not apply to its immunity analysis under La. R.S. 29:735(A)(1).[8] This court held in **Benton v. State through Department of Children & Family Services**, 2020-1214 (La. App. 1 Cir. 8/13/21), 2021 WL 3578857, *1 (unpublished writ action), <u>writ denied</u>, 2021-01815 (La. 1/26/22), 332 So.3d 82, that a Louisiana Department of Children and Family Services (LDCFS) employee driving outside of normal work hours to an alternate work location to distribute disaster supplemental nutritional cards to flood victims at the direction of LDCFS during a declared state of emergency was engaged in emergency-preparedness activity. While driving a non-government vehicle, the employee struck a pedestrian at an intersection when she was leaving home on her way to the disaster relief distribution center, which was over forty miles away. **Benton**, 2021 WL 3578857 at *2 (Holdridge, J., dissenting). This court concluded that her assignment and "the extraordinary travel incident thereto caused her to be engaged in a homeland security and emergency preparedness and recovery activity at the time of the accident." **Benton**, 2021 WL 3578857 at *1.

Similarly, **Breaux v. Worrell**, (W.D. La. 2024), 2024 WL 263943, *1-2, <u>appeal filed</u>, (5th Cir. 2024), involved an accident that occurred when TPCG's contracted employee, Kevin Worrell, collided with another vehicle on his way to his temporary assigned lodging in Lafayette from work in Houma while assisting in Hurricane Ida recovery during a state of emergency. The federal court found that

---

[8] In **Rabee**, the government employee was in a car accident in a government vehicle while driving to a special assignment protecting hurricane evacuees at a hotel during a state of emergency. 378 So.3d at 73.

"Louisiana courts have consistently held that an individual can be engaged in emergency preparedness activity when traveling to an emergency preparedness destination." **Breaux**, 2024 WL 263943 at *6, citing **Rabee**, 378 So.3d at 75, and **Benton**, 2021 WL 3578857 at *1. The court found that Mr. Worrell's return each day after work to his place of lodging was a necessary part of the emergency-preparedness activity and thus covered by La. R.S. 29:735's immunity. **Breaux**, 2024 WL 263943 at *7.

In this case, the undisputed facts establish that Mr. Bourg was traveling to check a pump for emergency preparedness when his supervisor called to tell him to return home due to the approaching hurricane. The collision at issue occurred almost immediately after he looked away from the road to hang up the phone, and he had not begun his drive home when it happened. Under these circumstances, TPCG and Mr. Bourg have met their burden of proving that the emergency preparedness immunity of La. R.S. 29:735(A)(1) applies, and the district court erred in granting Mr. Thibodeaux's summary judgment motion and denying Terrebonne's summary judgment motion.

## CONCLUSION

For the foregoing reasons, we reverse that part of the district court's February 22, 2024 judgment granting Gerald Thibodeaux Jr.'s motion for partial summary judgment finding immunity under La. R.S. 29:735(A)(1) did not apply to Marty Bourg and Terrebonne Parish Consolidated Government. We grant Marty Bourg and Terrebonne Parish Consolidated Government's writ application and reverse that part of the February 22, 2024 judgment denying their motion for summary judgment. We render judgment in favor of Marty Bourg and Terrebonne Parish Consolidated Government and against Gerald Thibodeaux, Jr., granting their motion for summary judgment, finding they are entitled to immunity under La. R.S. 29:735(A)(1), and

14

dismissing Mr. Thibodeaux's suit against them with prejudice. Appeal costs are assessed to Gerald Thibodeaux, Jr.

**JUDGMENT REVERSED AND RENDERED; WRIT GRANTED.**