567 So.2d 1097 (1990)
Carl MONTEVILLE
v.
TERREBONNE PARISH CONSOLIDATED GOVERNMENT.
No. 90-C-0298.
Supreme Court of Louisiana.
September 13, 1990.
Rehearing Denied November 8, 1990.
*1098 Joseph L. Waitz, Houma, for plaintiff/applicant.
Robert Peter Cuccia, Houma, for defendant/respondent.
DENNIS, Justice.[*]
We are called upon to decide whether a parish government may claim limited tort immunity under the Recreational Use Statutes, La.R.S. 9:2791 and 9:2795, as a shield against liability to a boatman who was injured by a premises defect in a boat ramp at the parish's 5.21 acre public boat launching and vehicle/trailer parking facility on La. Highway No. 56 and Bayou Petit Caillou in Terrebonne Parish. The trial court granted the parish summary judgment recognizing its immunity under the Recreational Use Statutes and dismissing plaintiff's suit. The court of appeal affirmed. Monteville v. Terrebonne Parish Consolidated Gov't, 554 So.2d 692 (La.App. 1st Cir.1989). We reverse. The Recreational Use Statutes were enacted to induce private owners of large acreages to open expanses of undeveloped lands for public outdoor, open land recreational purposes and may not be applied to immunize the state or its subdivisions from tort liability. Even if the premises in this case were owned by a private individual, it would not qualify as a large tract suitable for and opened for one of the recreational purposes specified by the Recreational Use Statutes. In any event, summary judgment was improperly granted because it was not shown that the boatman entered the premises for a recreational, rather than commercial or work-related, purpose.

Facts and Procedural Background
The undisputed facts established by the evidence filed in support of the motion for summary judgment are as follows. On the morning of July 10, 1985, Carl Monteville launched his boat from a trailer at the Cocodrie boat launching and vehicle/trailer parking facility, which is operated by the Terrebonne Parish Consolidated Government. *1099 One wheel of the trailer became caught in an underwater hole as he was pulling the trailer out of the water. Monteville tried to pull the trailer out of the hole by rapidly accelerating the truck, but this maneuver caused a sudden jerk of the vehicle as the wheel was pulled from the hole. As a result of this episode, Monteville suffered both property damage to his trailer and injuries to his back.
The accident occurred on a 5.21 acre tract of land leased by the Terrebonne Parish Consolidated Government for use as a public boat launch. The premises is located between La. Highway No. 56 and Bayou Petit Calliou, 22.1 miles from the corporate limits of the City of Houma. The premises includes a fisherman's landing store, a cement ramp and clam shell driveways and parking areas and is surrounded by several camps.
Monteville sued the parish government and its insurer, alleging that the parish's negligent maintenance of the boat launch caused his injuries. The parish government moved for summary judgment on the grounds that the Recreational Use Statutes, La.R.S. 9:2791 and 9:2795, applied to absolve it of responsibility for any mere negligence in maintaining the facility. At the time of the accident, these statutes provided in pertinent parts:
A. An owner, lessee, or occupant of premises owes no duty of care to keep such premises safe for entry or use by others for hunting, fishing, camping, hiking, sightseeing or boating or to give warning of any hazardous conditions, use of, structure or activities on such premises to persons entering for such purposes. If such an owner, lessee or occupant give permission to another to enter the premises for such recreational purposes he does not thereby extend any assurance that the premises are safe for such purposes or constitute the person to whom permission is granted one to whom a duty of care is owed, or assume responsibility for or incur liability for any injury to persons or property caused by any act of person to whom permission is granted.
B. This Section does not exclude any liability which would otherwise exist for deliberate and willful or malicious injury to persons or property, nor does it create any liability where such liability does not now exist. Furthermore the provisions of this Section shall not apply when the premises are used primarily for a commercial, recreational enterprise for profit; existing law governing such use is not changed by this Section.
C. The word "premises" as used in this Section includes lands, roads, waters, water courses, private ways and buildings, structures, machinery or equipment thereon.
La.R.S. 9:2791, as enacted by 1964 La.Acts No. 248, §§ 1-3.
A. As used in this Section:
(1) "Land" means land, roads, water, watercourses, private ways and buildings, structures, and machinery or equipment when attached to the realty.
(2) "Owner" means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises.
(3) "Recreational purposes" includes, but is not limited to, any of the following, or any combination thereof: hunting, fishing, trapping, swimming, boating, camping, picnicking, hiking, horseback riding, bicycle riding, motorized vehicle operation for recreation purposes, nature study, water skiing, ice skating, sledding, snow mobiling, snow skiing, summer and winter sports, and viewing or enjoying historical, archaeological, scenic, or scientific sites.
(4) "Charge" means the admission price or fee asked in return for permission to use lands.
B. Except for willful or malicious failure to warn against a dangerous condition, use, structure, or activity, an owner of land, except an owner of commercial recreational developments or facilities, who permits with or without charge any person to use his land for recreational purposes as herein defined does not thereby:

*1100 (1) Extend any assurance that the premises are safe for any purposes.
(2) Constitute such person the legal status of an invitee or licensee to whom a duty of care is owed.
(3) Incur liability for any injury to person or property incurred by such person.
La.R.S. 9:2795(A-B), as enacted by 1975 La.Acts. No. 615, § 2.
Finding these statutes applicable, the trial court granted the motion for summary judgment. Monteville moved for a new trial, proffering evidence of willful or malicious failure to warn discovered after the rendition of the judgment. The motion for new trial was denied.
Monteville appealed, and the court of appeal affirmed. Monteville v. Terrebonne Parish Consolidated Gov't, 554 So.2d 692 (La.App. 1st Cir.1989). We granted Monteville's writ application. 559 So.2d 1354 (La. 1990).

I.

Statutory Interpretation Principles
The Recreational Use Statutes, La. R.S. 9:2791 and 2795, are laws on the same subject and must be interpreted in reference to each other. La.C.C. art. 13 (1988); Keelen v. State Dept. of Culture and Recreation, 463 So.2d 1287 (La.1985).
The Recreational Use Statutes are in derogation of common or natural right and, therefore, are to be strictly interpreted, and must not be extended beyond their obvious meaning. Keelen v. State Department of Culture and Recreation, 463 So.2d 1287 (La.1985); see also G.I. Joe, Inc. v. Chevron U.S.A., 561 So.2d 62 (La. 1990); Louisiana Nat. Bank v. Triple R Contractors, 345 So.2d 7 (1977); Lamar Life Ins. Co. v. Babin, 246 La. 19, 163 So.2d 81 (1964); Charles Tolmas, Inc. v. Police Jury, 231 La. 1, 90 So.2d 65 (1956); Cendon v. H.G. Hill Stores, 171 La. 341, 131 So. 41 (1930); City of Crowley v. Duson, 147 La. 520, 85 So. 226 (1920). The rule that statutes in derogation of natural or common right are to be strictly interpreted is now generally recognized as being a corollary of the rule that statutes in derogation of the common law are to be interpreted strictly. See Strother v. Lucas, 37 U.S. (12 Pet.) 410, 9 L.Ed. 1137 (1838); Peters v. Hajacos, 91 W.Va. 88, 112 S.E. 233 (1922); Million v. Metropolitan Casualty Ins. Co., 95 Ind.App. 628, 172 N.E. 569 (1930); United States v. Dixie Carriers, Inc., 462 F.Supp. 1126 (E.D.La. 1978), aff'd 627 F.2d 736 (5th Cir.1980); See also Ketteringham v. Eureka Homestead Society, 140 La. 176, 72 So. 916 (1916). This rule is so well settled that it must be presumed that the legislature acted with full knowledge of the strict interpretation of statutes of this nature. O'Connor v. Smith, 188 Va. 214, 49 S.E.2d 310 (1948). The great majority of courts in other states interpreting recreational use statutes have held that because the statutes are in derogation of the common law and because they limit the duties of landowners in the face of a general expansion of premises liability principles, they must be strictly construed. See, e.g., Boileau v. DeCecco, 125 N.J.Super. 263, 310 A.2d 497 (1973), aff'd per curiam, 65 N.J. 234, 323 A.2d 449 (1974); Harrison v. Middlesex Water Co., 80 N.J. 391, 403 A.2d 910 (1979); Copeland v. Larson, 46 Wis.2d 337, 174 N.W.2d 745 (1970); LePoidevin v. Wilson, 111 Wis.2d 116, 330 N.W.2d 555 (1983); Gibson v. Keith, 492 A.2d 241 (Del.1985); Arias v. State Farm Fire & Casualty Co., 426 So.2d 1136 (Fla.App.1983); Walker v. City of Scottsdale, 163 Ariz. 206, 786 P.2d 1057 (Ariz.Ct.App.1989); Kucher v. County of Pierce, 24 Wash.App. 281, 600 P.2d 683 (1979); Page, The Law of Premises Liability, § 5.14 at 117 (2d ed. 1988). For the purpose of this rule, "common law" should be understood to carry its broadest meaning, i.e., the existing body of law, rather than the narrower definition of an ancient body of Anglo-American judge-made principles. 3 Sutherland Stat. Const. § 61.01 at p. 78 (4th ed. 1986). Accordingly, where there is any doubt about the intent or meaning of laws in derogation of common law or common right, such as the Recreational Use Statutes, the statutes are given the effect which makes the least rather than the most change in the existing body *1101 of law. Id.; Shaw v. North Pennsylvania R.R. Co., 101 U.S. 557, 25 L.Ed. 892 (1879); see also Polizzi v. Lotz, 240 La. 734, 125 So.2d 146 (1960); United States v. Dixie Carriers, Inc., 462 F.Supp. 1126 (E.D.La. 1978), aff'd 627 F.2d 736 (5th Cir.1980).
Furthermore, the Recreational Use Statutes constitute grants of immunities or advantages to a special class of landowners against the general public. It is an established principle that legislative grants of such rights, powers, privileges, immunities or benefits as against the general public, as distinguished from a right against some other party, should be construed strictly against the claims of the grantee. See Gundy v. Ozier, 409 So.2d 764 (Ala.1981); Carper v. New Castle County Board of Education, 432 A.2d 1202 (Del.1981); Prudential Insurance Co. of America v. City of Boston, 369 Mass. 542, 340 N.E.2d 858 (1976); Schisler v. Merchants Trust Co. of Muncie, 228 Ind. 594, 94 N.E.2d 665 (1950); Oakland County v. State, 161 Mich.App. 335, 410 N.W.2d 812 (1987); Katsaris v. Cook, 180 Cal.App.3d 256, 225 Cal.Rptr. 531 (1986); Metropolitan Service District of Portland v. Department of Environmental Quality, 28 Or.App. 113, 558 P.2d 1264 (1977); Western Nuclear, Inc. v. Andrus, 475 F.Supp. 654 (D.Wyo.1979). This is a policy of such fundamental character that it can be said to have its sources in the very conception of law consisting of norms that are general, uniform, and impartial in operation and in various constitutional guaranties aimed at assuring equal protection and equal treatment under the law. 3 Sutherland Stat. Const. § 63.02 (4th ed. 1986).
The enactment of recreational use statutes has been a significant development nationwide in the last couple of decades. See Prosser & Keeton § 60 at 415. As of 1964, only 10 states had enacted recreational use statutes. Note, Liability of Landowner to Persons Entering for Recreational Purposes, 1964 Wis.L.Rev. 705 (1964). In the intervening years, there were substantial lobbying efforts on the part of individual forest owners, sportsmen and conservation groups who wanted to encourage owners to make private lands more available for recreational purposes and who wanted to reduce the population of forest-destroying herds of deer. Id. at 709, 713, n. 51. Now forty-five states have laws which substantially limit the duties of occupiers of land toward visitors who enter for recreational purposes. Page, The Law of Premises Liability, § 5.13 at 115 (2d ed. 1988). Although the statutes vary in some particulars, they share a great deal of similarities. Hence, the decisions of other courts construing comparable legislative provisions are helpful in studying our own statutes.

Purpose of the Recreational Use Statutes
The stated goal of the Recreational Use Statutes is "to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes". § 2795. If a suitable tract is properly dedicated to one or more of the specified recreational purposes, the landowner or occupier's exposure to liability to a person who enters or uses the premises for such a recreational purpose is drastically limited. In such cases, the owner owes no duty of care to keep the premises safe or to give warnings of hazards, use, structure or activity on the premises. However, there is no limitation of liability for willful or malicious failure to guard or warn against a dangerous condition, structure, use or activity, or for injury when the premises are used as a commercial recreational development or facility or used primarily for a commercial, recreational enterprise for profit. §§ 2791; 2795.
In enacting § 2795, the legislature adopted, essentially without change, a model act presented by the Council of State Governments through its annual publication, Suggested State Legislation. The purpose of the model act was explained in its accompanying commentary:
Suggested State Legislation
PUBLIC RECREATION ON PRIVATE LANDS: LIMITATIONS ON LIABILITY
Recent years have seen a growing awareness of the need for additional *1102 recreational areas to serve the general public. The acquisition and operation of outdoor recreational facilities by governmental units is on the increase. However, large acreages of private land could add to the outdoor recreation resources available. Where the owners of private land suitable for recreational use make it available on a business basis, there may be little reason to treat such owners and the facilities they provide in any way different from that customary for operators of private enterprises. However, in those instances where private owners are willing to make their land available to members of the general public without charge, it is possible to argue that every reasonable encouragement should be given to them.
In something less than one-third of the states, legislation has been enacted limiting the liability of private owners who make their premises available for one or more public recreational uses. This is done on the theory that it is not reasonable to expect such owners to undergo the risks of liability for injury to persons and property attendant upon the use of their land by strangers from whom the accomodating owner receives no compensation or other favor in return.
The suggested act which follows is designed to encourage availability of private lands by limiting the liability of owners to situations in which they are compensated for the use of their property and to those in which injury results from malicious or willful acts of the owner. In the case of lands leased to states or their political subdivisions for recreational purposes, the legislation expressly provides that the owner will have no remaining liability to recreationists, except as such liability may be incorporated in an agreement, or unless the owner is compensated for the use of the land in addition to consideration for the lease.
The Council of State Governments, Public Recreation on Private Lands: Limitations on Liability, XXIV Suggested State Legislation 150 (1965) (Emphasis added).
There is nothing to indicate that the legislature had a different purpose in adopting § 2791.
The Recreational Use Statutes are therefore designed to induce the owners or occupiers of "large acreages of private land" to open them up "for one or more public recreational" purposes, as defined in the acts, "without compensation or other favor in return", by "limiting the liability" of such owners to recreational users to situations in which "injury results from malicious or willful acts of the owner."

The Recreational Use Statutes Affect Only Private Lands
The purpose of the Recreational Use Statutes, their legislative history and the state of the law at the time of original enactment indicate that the legislature intended to confer immunity only on owners of private lands. The texts of the statutes are silent on the subjects of sovereign, state, or governmental immunity. Consequently, there being at least a reasonable doubt about the meaning of the Recreational Use Statutes on this issue, the statutes must be strictly construed as making the least rather than the most change in the preexisting general law. Accordingly, we conclude that the qualified immunity offered by the Recreational Use Statutes must be interpreted strictly as a legislated inducement granted only to the owners of large acreages of private land to open them to the public as outdoor recreational areas.
As other courts and commentators have noted, many aspects of the enactment of the recreational use-immunity legislation strongly indicate that it was intended to benefit only private land owners. The history of the legislative movement indicates that it began as a response to the efforts of individual forest owners, sportsmen and conservationists who wanted to make private lands more available for recreational purposes. Copeland v. Larson, 46 Wis.2d 337, 174 N.W.2d 745 (1970); Page, The Law of Premises Liability, § 5.14 at 117 (2d ed. 1988); Comment, Landowner Liability Under the Wyoming Recreational Use Statute, 15 Land & Water L.Rev. 649, 650 (1980); Note, Torts-Statutes-Liability of Landowners *1103 to Persons Entering for Recreational Purposes, 1964 Wis.L.Rev. 705, 709 (1964). The purpose of limiting liability is explicitly stated in the commentary of the model act, from which virtually all states' acts are derived, to be that of encouraging private owners to make their land available for the recreation of the public. Goodson v. Racine, 61 Wis.2d 554, 213 N.W.2d 16 (1973); Hovet v. City of Bagley, 325 N.W.2d 813 (Minn.1982); Barrett, Good Sports and Bad Lands: The Application of Washington's Recreational Use Statute Limiting Landowner Liability, 53 Wash.L. Rev. 1, 2 (1977); Annotation, Effect of Statute Limiting Landowner's Liability for Personal Injury to Recreational User, 47 A.L.R.4th 262, 270 (1986). Indeed, the title of the section in which the suggested legislation appears is "Public Recreation on Private Lands: Limitations on Liability." 24 Council of State Governments, Suggested State Legislation 150 (1965); 47 A.L.R.4th at 270; Murchison, Developments in the Law, 1985-1986Local Government Law, 47 L.L.Rev. 305, 330 n. 140 (1986). Since public lands are always acquired, and usually held, for the use of the public, it is unlikely that the legislative object in such legislation was to encourage the state to permit the people to use public property. Goodson v. City of Racine, 213 N.W.2d at 19; Ferres v. City of New Rochelle, 68 N.Y.2d 446, 510 N.Y.S.2d 57, 502 N.E.2d 972 (1986); City of Pensacola v. Stamm, 448 So.2d 39, 41 (Fla.App.1984); cf. Chapman v. Pinellas County, 423 So.2d 578 (Fla.App.1982); Metropolitan Dade County v. Yelvington, 392 So.2d 911 (Fla.App.) pet. denied, 389 So.2d 1113 (Fla.1980). It is also unlikely that any legislature, had it desired to confer immunity on the state, would do so by such an imprecise, indefinite and indistinct vehicle as the model statute promoting public recreation on private lands. Borgen v. Fort Pitt Museum Associates, 83 Pa.Commw. 207, 477 A.2d 36 (1984); see also Landry v. Board of Levee Commissioners, 477 So.2d 672, 675 (1985); Murchison, supra at 324; Malone, Louisiana Legislation of 1964: A Symposium-Torts, 25 La.L.Rev. 47 (1964). At the time of the initial enactment in most states, including Louisiana, the doctrine of sovereign immunity was a bar to suits against the state and other governmental bodies; it is therefore improbable that the legislature intended to reinforce that ancient and then firmly entrenched doctrine by means of a statute enacted to encourage landowners who might otherwise be fearful of exposure to liability to open their lands to public recreational activities. Noel v. Town of Ogunquit, 555 A.2d 1054 (Me.1989), Borgen v. Fort Pitt Museum Associates, 83 Pa.Commw. 207, 477 A.2d 36 (1984).
On the other hand, most courts reaching the opposite result do so because their states' sovereign immunity statutes or torts claims acts require that the state be held to be immune whenever a similarly situated private person would be. See McCord v. Ohio Division of Parks & Recreation, 54 Ohio St.2d 72, 375 N.E.2d 50 (1978); Sublett v. United States, 688 S.W.2d 328 (Ky.1985) (applying Federal Tort Claims Act to Kentucky immunity statute); Trimblett v. State, 156 N.J.Super. 291, 383 A.2d 1146 (1977); Anderson v. City of Springfield, 406 Mass. 632, 549 N.E.2d 1127 (1990); Commonwealth Dep't of Environmental Resources v. Auresto, 511 Pa. 73, 511 A.2d 815 (1986). In those jurisdictions, the fundamental general rule is that the sovereign or the state is immune from all tort liability. But this immunity has been waived with certain exceptions or reservations. One of the reservations of immunity, usually contained in a sovereign immunity statute or a torts claims act, in essence, is that the state is to be held liable only in the same manner and to the same extent as a private individual under like circumstances. Therefore, in those states, if a private person would be entitled to immunity under a recreational use statute, the reservation of sovereign immunity requires that the state, in a similar situation, be held immune also. Consequently, we cannot say how these courts would have interpreted the recreational use statutes in the absence of their states' torts claims acts or sovereign immunity statutes. These decisions, therefore, do not constitute authoritative interpretations of recreational use statutes at all.
*1104 In Louisiana, we start with the fundamental premise that "[n]either the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to a person or property." La. Constitution Art. XII, § 10(A). Louisiana does not have a sovereign immunity statute, a torts claims act or any legislative provision that equates governmental liability or immunity with that of a private person. See Robertson, Tort Liability of Governmental Units in Louisiana, 64 Tul.L. Rev. 857, 885-886 (1990). Consequently, the decisions by courts of other states construing and applying their torts claims acts and sovereign immunity laws are inapposite and unpersuasive in the present case.
Construing the Recreational Use Statute strictly, for the reasons stated above, we conclude that there is at least reasonable doubt, and probably grave doubt, that the statutes were intended to apply to anyone other than private landowners. Therefore, the statutes should be given the effect which makes the least rather than the most change in the preexisting general law. Accordingly, we conclude that the Recreational Use Statutes were not intended to apply to public lands or to grant immunity to the state, its agencies or subdivisions.

II.
Even if the premises in this case were owned by a private individual, it would not qualify as a large tract of open, undeveloped land suitable for and dedicated to one of the recreational purposes specified by the Recreational Use Statutes.

Recreational Purpose
"Recreational purposes" are defined by the Recreational Use Statutes comprehensively, exhaustively and repetitiously. § 2791 indicates simply that the recreational purposes for which land may be opened with benefit of immunity are "hunting, fishing, camping, hiking, sightseeing or boating." § 2795 provides that the recreational purposes "include, but [are] not limited to, any of the following, or any combination thereof: hunting, fishing, trapping, swimming, boating, camping, picnicking, hiking, horseback riding, bicycle riding, motorized vehicle operation for recreational purposes, nature study, water skiing, ice skating, sledding, snow mobiling, snow skiing, summer and winter sports, and viewing or enjoying historical archaeological, scenic, or scientific sites."
Because the purpose of the Recreational Use Statutes was to induce owners of large, remote acreages to dedicate suitable tracts for these particular recreational purposes, and because it was unrealistic to expect owners of farms, forests or other large, remote tracts to undertake the heavy cost of monitoring and maintaining these vast and remote lands for safe public use, it was thought necessary to free the owners of this burden by granting them limited tort immunity in order to persuade them to dedicate large acreages for these recreational purposes. By contrast, smaller, readily accessible tracts of land are less apt to be suitable for the specified recreational purposes and are less costly for the owner to have monitored and maintained due to their size and proximity to population and urban services. Consequently, in view of the purpose and underlying policy considerations of the Recreational Use Statutes, and in light of the many cogent reasons for construing them narrowly and in keeping with their purpose, the statutes must be strictly interpreted to limit liability only when the recreational activity takes place on large, remote acreage dedicated to and suitable for one of the specified recreational purposes. See Rivera v. Philadelphia Theological Seminary, 510 Pa. 1, 507 A.2d 1 (1986); Harrison v. Middlesex Water Co., 80 N.J. 391, 403 A.2d 910 (1979); Jones v. United States, 693 F.2d 1299 (10th Cir. 1982); Comment, Beyond Commonwealth v. Auresto: Which Property is Protected by the Recreation Use of Land & Water Act, 49 U.Pitt.L.Rev. 261, 276-279 (1987); Barrett, Good Sports and Bad Lands: The Application of Washington's Recreational Use Statute Limiting Landowner Liability, 53 Wash.L.Rev. 1, 22 (1977).[1]
*1105 Accordingly, this court in Keelen v. State Dept. of Culture etc., supra, held that the legislature did not intend to grant tort immunity to all premises open to the public for swimming, even though "swimming" is included within the statutory definition of "recreational purposes", because the purpose of the statutes is to confer immunity only on "open and undeveloped expanses of property" suitable for the type of recreational activities enumerated. Id. at 1290. We observed that:
The use of the language "land and water areas" is suggestive of open and undeveloped expanses of property. Furthermore, the type of recreational activities enumerated in both statuteshunting, fishing, trapping, camping, nature study, etc.can normally be accommodated only on large tracts or areas of natural and undeveloped lands located in thinly-populated rural or semi-rural locales. Specification of these types of activities suggests a policy that would encourage landowners to keep their property in a natural, open and environmentally wholesome state. We would stray from this goal were we to construe the statutes to grant a blanket immunity to landowners without regard to the characteristics of their property. Thus, we conclude that the legislature intended to confer immunity upon owners of undeveloped, nonresidential rural or semi-rural land areas. The size, naturalness and remoteness or insulation from populated areas all attribute to the categorization of property as rural or semi-rural. 463 So.2d at 1290.
By the same token, in instances when the activity of the entrant is not one of those enumerated by the statute that can be accommodated only on large expanses of open and undeveloped lands, courts have held that the recreational use acts do not apply. In Villanova v. American Federation of Musicians, Local 16, 123 N.J. Super. 57, 301 A.2d 467 (1973) cert. denied 63 N.J. 504, 308 A.2d 669 (1973), the plaintiff was a member of a band involved in a free outdoor park concert. The defendant, in urging its immunity under the recreational use act, relied on statutory and dictionary definitions of recreation as "forms of play, amusement, diversion or relaxation." Id., 301 A.2d at 468. The New Jersey appellate court rejected the defendant's interpretation as unnecessarily broad to conclude that recreational uses covered by the statute generally are characterized by physical activities typically requiring the outdoors. Barrett, Good Sports and Bad Lands: The Application of Washington's Recreational Use Statute Limiting Landowner Liability, 53 Wash.L.Rev. 1, 21 (1977).
Moreover, an owner who does not evidence an intent to permit the public to enter without charge for recreational use may not invoke the recreational use statute's protective benefits against liability. Gibson v. Keith, 492 A.2d 241 (Del.1985). This case arose from a swimming accident at a water hole in a gravel pit in an isolated area. The plaintiff, a 17 year old minor, suffered paralytic injuries when he dove into shallow water from a rope swing affixed to a nearby tree. The defendants denied giving him permission to enter and swim in the borrow pit. The Delaware Supreme Court held that the recreational use statute may only be invoked to limit the liability of real property owners who directly or indirectly invite or permit without charge the public at large to use their property for recreational purposes. See also, LePoidevin v. Wilson, 111 Wis.2d 116, 330 N.W.2d 555, 47 A.L.R. 4th 247 (1983) (recreational use statutes not applicable where owner opened land to social guest but not to public).

Application of Precepts
Applying the foregoing precepts, we conclude that, even if the boat launching *1106 facility had been privately owned, the Recreational Use Statutes would not be applicable to afford qualified immunity in the present case. The premises which the defendant opened to the public was not a large, remote or open and undeveloped expanse of land. It was instead a fully developed 5.21 acre boat launching and vehicle/trailer parking facility containing a fisherman's landing store, a cement ramp and clam shell driveways and parking areas, located strategically between a state highway and a navigable bayou. The premises was small, readily accessible and, thus, much less costly to maintain and monitor than a large, remote tract more difficult in approach, size and arrangement. Construing the Recreational Use Statutes strictly and in conformity with the legislative purpose, it is evident that the parish government's facility is not the type of open and undeveloped expanse of land that the legislature sought to induce owners to dedicate to ultimate recreational purposes.

Recreational Entrant Status Not Shown
Although we conclude that the Recreational Use Statutes are not applicable to the parish government or to the particular tract of land involved for the reasons assigned, it should be noted that the summary judgment was incorrectly granted for an additional reason. Even if the Recreational Use Statutes were applicable, the moving party, the parish government, did not carry its burden of showing that the plaintiff entered or used the premises for a recreational purpose. The summary judgment evidence shows only that he launched and retrieved a boat. It does not sustain the mover's burden of proof that the plaintiff entered or used the premises for recreational, as opposed to commercial or work-related, boating activities.

Decree
The judgments of the lower courts are reversed. The defendant's motion for summary judgment is denied, and the case is remanded to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED TO THE TRIAL COURT.
MARCUS and LEMMON, JJ., concur and assign reasons.
COLE, J., concurs for reasons assigned by MARCUS, J.
LEMMON, Justice, concurring.
I agree that the premises on which plaintiff was injured does not qualify under Keelen v. State of Louisiana, Department of Culture, Recreation and Tourism, 463 So.2d 1287 (La.1985) as an open and undeveloped expanse of property for which the immunity statutes were designed. I therefore find it unnecessary to address the issue of whether the state and its subdivisions should be treated differently than other landowners whose land would qualify under the statutes.
MARCUS, Justice (concurring).
I agree with the majority that the Recreational Use Statutes do not apply because "the parish government's facility is not the type of open and undeveloped expanse of land that the legislature sought to induce owners to dedicate to ultimate recreational purposes." Therefore, it is unnecessary to reach the question of whether the statutes apply to the state or its subdivisions. In any event, I do not agree that the Recreational Use Statutes were intended to provide immunity only to private landowners and not to the state or its subdivisions. La.R.S. 9:2795 refers simply to an "owner, lessee, or occupant" of premises. La.R.S. 9:2791 defines "owner" as the "possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises." Nowhere do the statutes distinguish between premises owner by private owners and premises owned by the state or its subdivisions. The words are clear and unambiguous. "Owner ... of premises" includes both private and public landowners.
Accordingly, I respectfully concur.
NOTES
[*] Judge Melvin A. Shortess of the First Circuit Court of Appeal participated in this decision as Associate Justice Pro Tempore.
[1] An additional factor that may be considered when interpreting the Recreational Use Statutes in borderline cases is the protection of the reasonable expectations of the recreational user that the land will be properly maintained and inspected. See Scheck v. Houdaille Construction Materials, Inc., 121 N.J.Super. 335, 297 A.2d 17 (1972); Comment, Beyond Commonwealth v. Auresto: Which Property is Protected by the Recreation Use of Land & Water Act, 49 U.Pitt. L.Rev. 261, 279 (1987). Generally an entrant's expectation that the premises will be properly maintained and inspected is enhanced by the development of the tract and/or the urbanization of its surroundings. See 49 U.Pitt.L.Rev. at 279.