KERRI ULRICH

VERSUS

CITY OF WESTWEGO

NO. 25-C-174

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPLICATION FOR SUPERVISORY REVIEW FROM THE
TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 845-358, DIVISION "J"
HONORABLE STEPHEN C. GREFER, JUDGE PRESIDING

September 24, 2025

**JOHN J. MOLAISON, JR.**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Jude G. Gravois, John J. Molaison, Jr., Scott U. Schlegel, and Timothy S. Marcel

**WRIT GRANTED; JUDGMENT REVERSED; SUMMARY JUDGMENT GRANTED**
    **JJM**
    **SUS**

**CONCURS WITH REASONS**
    **TSM**

**DISSENTS WITH REASONS**
    **FHW**

**RESPECTFULLY DISSENTS FOR REASONS ASSIGNED BY WICKER, J.**
    **JGG**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR DEFENDANT/RELATOR,
CITY OF WESTWEGO
     Sean M. Donovan
     James L. Donovan, Jr.

COUNSEL FOR PLAINTIFF/RESPONDENT,
KERRI ULRICH
     George B. Recile
     Jonathan M. Lee

**MOLAISON, J.**

The defendant, the City of Westwego (the City), seeks a review of the trial court's March 27, 2025, judgment denying its summary judgment motion. The issue is whether the City is immune from liability for plaintiff Kerri Ulrich's personal injury claims based on the recreational use immunity provisions outlined in La. R.S. 9:2795. For reasons explained below, we reverse the trial court's judgment, grant the motion, and dismiss all claims Ms. Ulrich alleged against the City.

## FACTS AND PROCEDURAL HISTORY

The plaintiff filed suit against the City, alleging that on December 4, 2022, she was injured at Catfish Bourgeois Park, over which the City had custody and/or control, while attending the annual Christmas lighting and parade. The plaintiff alleged that she stepped into and fell into a covered hole in the ground that the removal of a tree had created. According to La. R.S. 9:2791 and La. R.S. 9:2795, the City filed a Motion for Summary Judgment asserting that owners and operators of property used for recreational purposes are entitled to immunity from tortious liability. The City maintained that La. R.S. 9:2795 (E)(2)(a) provides that the statute's limitation of liability "shall apply to any lands, whether urban or rural, which are owned, leased or managed as a public park by the state or any of its political subdivisions and which are used for recreational purposes." The City argued that Catfish Bourgeois Park qualifies for immunity under the statute's plain language, as it is a public recreational park owned and managed by the City for recreational purposes. The plaintiff was in the park attending the annual Christmas light show and parade, an outdoor recreational activity as defined by the statutes.

The plaintiff opposed the motion, arguing that she fell in an area surrounded by outside vendors selling food, drinks, gifts, and other items for profit during the event. The plaintiff argued that she was not in the process of a recreational activity

1

pursued in the "true outdoors" as mandated by the statute. Alternatively, the plaintiff argued that if the court found the City entitled to immunity under the statute, the plaintiff would have to establish a malicious or willful failure to warn of a dangerous condition. The plaintiff argued that the City created the unreasonably dangerous condition, failed to take the proper precautions to remedy the defect until after she fell, and did not warn its guests of this dangerous condition.

In denying the motion for summary judgment, the trial judge stated, "[T]here are issues with regard to the use," and there is a "mixed question of fact and law as to whether or not someone else might determine that this is recreational or nonrecreational or fit within the statute, or not fit within the statute."

The City filed a notice of intent to apply for supervisory writs and filed a timely writ application with this Court. After reviewing the writ application, this Court allowed the parties to present oral arguments and submit additional briefing following La. C.C.P. art. 966(H).

## LAW AND DISCUSSION

In this writ application, the City contends that La. R.S. 9:2795 applies to an owner of the land, urban or rural, who permits, with or without charge, any person to use the land for recreational purposes, and the owner does not incur liability for any injury to a person caused by any defect in the land regardless of whether naturally occurring or man-made. It argues that the list of enumerated activities in the statute evidences a clear intent of the legislature to grant immunity for those recreational activities in which one engages in the true outdoors. The City reasons that the plaintiff was at Catfish Bourgeois Park to enjoy and view the annual Christmas lighting and parade, a recreational activity encompassed by the statute. The City further argues that, based on these facts, it is entitled to immunity under La. R.S. 9:2795, and the burden of proving a malicious or willful failure to warn of

2

a dangerous condition shifted to the plaintiff. The City maintains that the plaintiff has not presented any evidence that the defendant was aware of the alleged defect and acted maliciously or willfully in failing to warn.

The summary judgment procedure is favored and designed to secure a just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2). A trial court must grant a motion for summary judgment if the motion, memorandum, and supporting documents show no genuine issue regarding a material fact, and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). Appellate courts review summary judgments *de novo* using the same criteria that govern the trial court's determination of whether summary judgment is appropriate. *Reed v. Landry*, 21-589 (La. App. 5 Cir. 6/3/22), 343 So.3d 874, 880.

The legislature created the Recreational Use Statutes "to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes." *Monteville v. Terrebonne Par. Consol. Gov't*, 567 So.2d 1097, 1101 (La. 1990). These immunity statutes are subject to strict interpretation and cannot be extended beyond their literal meaning, as they derogate from a natural or common right. *Id*. at 1100. At the same time, Louisiana courts recognize that the enactment of immunity statutes is evidence of the legislature's intent to grant broad immunity from liability. *Richard v. Hall*, 03-1488 (La. 4/23/04), 874 So.2d 131, 151.

La. R.S. 9:2795 provides a limitation of liability for landowners, including the state and its political subdivisions, of property used for recreational purposes. "Recreational purposes" includes "but is not limited to any of the following, or any combination thereof: hunting, fishing, trapping, swimming, boating, camping, picnicking, hiking, horseback riding, bicycle riding, motorized, or nonmotorized

3

vehicle operation for recreation purposes, nature study, water skiing, ice skating, roller skating, roller blading, skate boarding, sledding, snowmobiling, snow skiing, summer and winter sports, or viewing or enjoying historical, archaeological, scenic, or scientific sites." This Court has held the "including, but not limited to" language of the statute makes it clear that the legislature did not intend that the list of enumerated activities to be exhaustive. *Richard v. Louisiana Newpack Shrimp Co., Inc.*, 11-309 (La. App. 5 Cir. 12/28/11), 82 So.3d 541.

In a case similar to the instant case, the Court found that attendance at an outdoor music festival was a recreational activity under the immunity statutes. *Beal v. Westchester Surplus Lines Ins. Co.*, 21-187 (La. App. 4 Cir. 12/15/21), 334 So.3d 438, *writ denied*, 22-114 (La. 4/5/22), 335 So.3d 838. In *Beal,* the court noted that although a music festival can occur indoors and outdoors, the expansive immunity statutes evidenced an intent by the legislature to grant broad immunity from liability. The court found the definition of recreational purposes was broad enough to include the activities generally associated with attending an outdoor music festival.

In opposition to the City's summary judgment motion, the plaintiff relied on the decision of *Maher v. New Orleans City Park*, 23-0416 (La. App. 4 Cir. 12/18/23), 382 So.3d 1045, 1050, *aff'd on reh'g* (Jan. 29, 2024), *writ granted in part, judgment amended*, 24-00289 (La. 4/30/24), 383 So.3d 919. In *Maher*, the plaintiff filed suit for injuries she sustained when she fell while attending Celebration in the Oaks. In reversing the trial court's grant of summary judgment, the appellate court stated that the defendant "failed to establish that Celebration in the Oaks is a recreational activity that requires the true outdoors, such as fishing, hunting, and camping." The court did not address the omnibus clause in the statute but noted that the park charged a fee for entrance to this event. The *Maher* decision is not persuasive or controlling.

4

The plaintiff referred to this Court's decision in *Glorioso v. City of Kenner*, 19-298 (La. App. 5 Cir. 12/18/19), 285 So.3d 601, in support of her contention that the she was not attending a recreational activity within the scope of the recreational use immunity statutes. But *Glorioso* is clearly distinguishable. In *Glorioso,* the plaintiff's daughter was injured while participating in gymnastics inside of a gymnasium. This Court noted that gymnastics is not an activity that is generally conducted outdoors.

The plaintiff was at Catfish Bourgeois Park, a public park owned, managed, and operated by the City of Westwego, to enjoy the annual Christmas lights and parade. She entered the public park free of charge to interact with other community members and view the Christmas lights and parade, an event held at the park for the past fifteen years. She purchased a drink from one of the vendors at the park just before her fall. She was at the park to "view or enjoy" a "scenic" sight, i.e., the Christmas lights and parade, events that traditionally take place outdoors. The plaintiff's attendance at this free local, annual event in the public park falls under the broad definition of recreational activity for which the legislature intended to grant immunity to the City as the owner/operator of the park.

Alternatively, the plaintiff argues that the City created the unreasonably dangerous condition that caused her fall, failed to take the proper precautions to remedy the defect until after her accident, and failed to warn its guests of the hazardous condition in the park. In support of this argument, the plaintiff relies on the deposition testimony of two City employees, park supervisor Brennen Camardelle and Chad Usea.

Mr. Camardelle testified that he was at the park every day, and if there was a hole "or anything," he would have seen or "felt it." He inspected the area of the accident the day after the plaintiff's fall and did not see any visible holes or

5

hazards in the area. He laid down dirt in the area of the fall as instructed by his supervisor. He stated that the area was approximately one-half inch different from the surrounding elevation.

Chad Usea inspected city properties, including Catfish Bourgeois Park, when the plaintiff fell. He inspected this park about two or three times a month. He inspected and took pictures of the grassy area the day after the plaintiff's fall. Mr. Usea testified he did not see any visible hole when he inspected and photographed the area. He took additional pictures after placing dirt in the area.

Mr. Usea and Mr. Camardelle testified that they were unaware of any complaints involving this grassy area before the plaintiff's fall. Mr. Camardelle stated that, to his knowledge, no incidents such as the plaintiff's fall had occurred in the park area before or after the plaintiff's fall.

Once a defendant has established that it is entitled to immunity under the statutes, the burden of proving a malicious or willful failure to warn of a dangerous condition shifts to the plaintiff. *Richard*, 82 So.3d at 547. "A failure to warn of a dangerous condition connotes a conscious course of action and is deemed willful or malicious when action is knowingly taken or not taken, which would likely cause injury, with conscious indifference to consequences thereof." *Robinson v. Jefferson Par. Sch. Bd.*, 08-1224 (La. App. 5 Cir. 4/7/09), 9 So.3d 1035, 1039, *writ denied*, 09-1187 (La. 9/18/09), 17 So.3d 975.

In this case, there is no evidence to suggest that the City ignored or failed to warn of any clear and obvious danger at this park. The two city employees testified that there was no hole or hazard where the plaintiff fell. Thus, the plaintiff cannot meet her burden of proving that the City's conduct constitutes a willful, malicious, and intentional failure to correct and/or warn the plaintiff of a defect or dangerous condition.

**CONCLUSION**

After *de novo* review, we grant this writ application and reverse the trial court's judgment, denying the City's motion for summary judgment. We grant the City of Westwego's motion for summary judgment and dismiss the plaintiff Kerri Ulrich's claims against the City with prejudice.

**WRIT GRANTED; JUDGMENT REVERSED; SUMMARY JUDGMENT GRANTED**

KERRI ULRICH                                            NO. 25-C-174

VERSUS                                                  FIFTH CIRCUIT

CITY OF WESTWEGO                                        COURT OF APPEAL

                                                        STATE OF LOUISIANA

**MARCEL, J., CONCURS WITH REASONS**

I concur in the decision to reverse the trial court's judgment, and grant the motion for summary judgment filed by the City of Westwego, and dismiss plaintiff's case for reasons different from what is articulated in the majority opinion. As the minority correctly observes, the Supreme Court has instructed that the Recreational Use Statutes are to be strictly construed. See *Monteville v. Terrebonne Par. Consol. Gov't*, 567 So.2d 1097, 1100 (La.1990); *Richard v. Hall*, 2003-1488, p. 22 (La. 4/23/04), 874 So.2d 131, 148. However, courts presented with interpretating the immunity statute presented in his case, La. R.S. 9:2795, are tasked with strictly construing a term, "recreational use", that is defined by a broad illustrative list of activities which the legislature contemplates as recreational. This poses a problem not clearly resolved through the application of well-established principles of statutory interpretation. See La. Civil Code arts. 9-13; La. R.S. 1:3; *Glorioso v. City of Kenner*, 19-298, p. 4 (La. App. 5 Cir. 12/18/19), 285 So.3d 601, 604, *writ denied*, 2020-00120 (La. 3/9/20), 294 So.3d 484. Until such time as the Legislature provides a clearer definition of "recreational purposes" and/or a clearer expression of their intent, I believe such cases will continue to be decided on a case-by-case basis. Under the facts and evidence presented in this case, I believe the City of Westwego is entitled to immunity under the Recreational Use Statutes for the alleged injuries sustained by plaintiff in the Catfish Bourgeois Park on December 4, 2022.

1

KERRI ULRICH

VERSUS

CITY OF WESTWEGO

NO. 25-C-174

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

**WICKER, J., DISSENTS WITH REASONS**

I respectfully dissent to express my disagreement with the majority's analysis of the law governing the City of Westwego's claim that it is immune from liability in this case as a matter of law based on the Recreational Use Statutes, La. R.S. 9:2791 and 9:2795. After considering the applicable law and the undisputed facts concerning the activities that were taking place at the public park where the plaintiff was injured, I do not believe that the City of Westwego (the "City") met its burden of establishing that the plaintiff was using the park for a "recreational purpose," as that term is statutorily defined—a prerequisite to invoking the statutory immunity. La. R.S. 9:2791(A); 9:2795(A)(3), (E)(2)(a). Accordingly, I would deny the City's writ application seeking to overturn the trial court's denial of its motion for summary judgment.

*Statutory Provisions and Rules of Statutory Interpretation*

The two statutes, La. R.S. 9:2791 and 9:2795, were enacted at different times and contain similar provisions designed to encourage landowners to open their lands, on a basically nonprofit basis, for recreational use. *Richard v. Hall*, 03-1488 (La. 4/23/04), 874 So.2d 131, 147-48 ("*Hall*"); *Richard v. Louisiana Newpack Shrimp Co., Inc.*, 11-309 (La. App. 5 Cir. 12/28/11), 82 So.3d 541, 546 ("*Newpack*"). The statutes provide immunity from tort liability to landowners, both public and private, under certain circumstances, which are defined in the statutes. For purposes of this writ application, the most significant statutory

1

provisions are those defining what types of recreational uses or purposes will trigger application of the immunity provisions.

Unless the provisions of the two statutes differ, they should be construed with reference to each other. *Hall*, 874 So.2d at 148; *Newpack*, 82 So.3d at 546. In the event of a conflict, the provisions of La. R.S. 9:2795, the more recent statute, control. *Hall*, 874 So.2d at 151.

Although both statutes have been amended since their initial enactment, the Louisiana Supreme Court and this Court have consistently observed that the statutes must be strictly construed and must not be extended beyond their obvious meaning because they limit the right of plaintiffs to bring tort actions, and, as such, are in derogation of a common right. *See, e.g., Keelen v. State, Dept. of Culture, Recreation and Tourism*, 463 So.2d 1287, 1289 (La. 1985); *Hall*, 874 So.2d at 148; *Newpack*, 82 So.3d at 546; *Glorioso v. City of Kenner*, 19-298 (La. App. 5 Cir. 12/18/19), 285 So.3d 601, 604, *writ denied*, 20-120 (La. 3/9/20), 294 So.3d 484.

When there is any doubt about the intent or meaning of laws in derogation of common rights, such as the Recreational Use Statutes, the statutes must be given the effect which makes the least rather than the most change in the existing body of law. *Monteville v. Terrebonne Parish Consol. Government*, 567 So.2d 1097, 1100-01 (La. 1990); *Glorioso*, 285 So.3d at 604.

As this Court has previously observed, La. R.S. 9:2791(A), the first enacted statute, provides a restrictive list of the types of recreational activities for which immunity is granted— hunting, fishing, camping, hiking, sightseeing, or boating— while the later enactment, La. R.S. 9:2795(A)(3), contains a broader and more expansive definition:

> "Recreational purposes" includes but is not limited to any of the following, or any combination thereof: hunting, fishing, trapping, swimming, boating, camping, picnicking, hiking, horseback riding, bicycle riding, motorized, or nonmotorized vehicle operation for recreation purposes, nature study, water skiing, ice

2

skating, roller skating, roller blading, skate boarding, sledding, snowmobiling, snow skiing, summer and winter sports, or viewing or enjoying historical, archaeological, scenic, or scientific sites.

*Newpack*, 82 So.3d at 546. The Legislature's enactment of the broader provision clearly evidenced its intention to expand the scope of the immunity as initially set forth in § 2791(A), but the broader language in § 2795(A)(3) must still be construed in accordance with the Legislature's intent in enacting that provision and must not be extended beyond its obvious meaning. *See and compare Hall*, 874 So.2d at 151, and *Newpack*, 82 So.3d at 546.

The "including but not limited to" language in the definition of the term "recreational purposes" in § 2795(A)(3) makes clear that the Legislature did not intend that the list of enumerated activities was exhaustive. *Id.* Even so, however, the list is not unlimited, and the more expansive language should not be construed as evidencing a legislative intent to expand the immunity of the statute to include all recreational activities. *Glorioso*, 285 So.3d at 604-05.[1] Consequently, courts must still consider whether the activities in a particular case are within the scope of activities for which the Legislature intended to grant immunity.

In the *Glorioso* case, Molly Glorioso's father brought suit on her behalf against the City of Kenner after Molly, age 5, was injured during a gymnastics class at the city-owned Barbre gym. Although the activity in question there was indoor gymnastics, which is far different than the activities at issue in this case, I believe this Court correctly articulated there how the meaning of the term "recreational purposes" in § 2795(A)(3) should be analyzed:

> The activities enumerated in the statute are clearly activities that are typically done in, and require, the true outdoors. And while a very limited few of the activities enumerated in the statute, typically done in the true outdoors, might conceivably also be done indoors, this does not evidence an intent on the part of the

---

[1] By contrast, North Dakota's recreational use immunity statute provides a much broader definition of the term "recreational purposes" by stating that the term "includes any activity engaged in for the purpose of exercise, relaxation, pleasure, or education." N.D.C.C. 53-08-01(5).

3

> legislature to expand the immunity of the statute to include *all* recreational activities regardless of whether they are typically done outdoors or indoors. In our opinion, the list of enumerated activities evidences a clear intent of the legislature to grant immunity for those recreational activities in which one engages in the true outdoors.

*Glorioso*, 285 So.3d at 605.

The majority opinion does not cite, discuss, or distinguish this Court's analysis of the meaning of the term "recreational purposes" in *Glorioso*.

### *Commercial Use of Property*

Both Recreational Use Statutes limit the statutory immunity to owners of property used for recreational purposes and exclude immunity for commercial recreational developments or facilities. § 2791(A), (B), as interpreted in *Hall*, 874 So.2d at 151; § 2795(B)(1), (E)(2)(a). In opposition to the summary judgment motion, plaintiff argued that the City is not entitled to claim immunity because the park was being used for commercial purposes. This argument is not supported factually, as explained in more detail below, but is mentioned here to clarify how that determination is to be made.

Pursuant to § 2795(B)(1), the use of property may be classified as recreational, and thereby subject to the immunity, even if there is an admission charge.[2] In order for the property to be considered commercial, the owner must intend, as its primary objective, to derive a profit from any fees collected or other monies received in connection with the use of the property. *See and compare Pratt v. State*, 408 So.2d 336, 342 (La. App. 3 Cir. 1981), *writ denied*, 412 So.2d 1098 (La. 1982), and *Bailey v. Department of Culture, Recreation and Tourism*, 21-227 (La. App. 1 Cir. 11/4/21) 332 So.3d 679, 687-88.

No such intention has been shown here.

---

[2] That subsection grants immunity to "an owner of land, except an owner of commercial recreational developments or facilities, who permits with or without charge any person to use his land for recreational purposes as herein defined[,]" unless the owner willfully or maliciously fails to warn of a dangerous condition, use, structure, or activity.

*Undisputed Facts*

The facts pertaining to the City's summary judgment motion were presented through the City's written statement of "Material Facts Not Genuinely Disputed," the plaintiff's written response to that statement, and the deposition testimony of the plaintiff, Kerri Ulrich, and two City employees with responsibilities involving Catfish Bourgeois Park, the city-owned public park in which the plaintiff was walking at the time of her injury.

The undisputed facts indicate that Ms. Ulrich lived less than a block away from the park. She described it as a small park, about two city blocks long, with a walking track, two tennis courts, and a field used for playing baseball, soccer and football. The walking track was round, with a grassy area inside the track. There were two pavilions, one on each side of the walking track, with a walkway running from each pavilion to the track.

Ms. Ulrich went to the park on December 4, 2022, for the City's annual Christmas tree lighting and to watch the end of a parade in which her cousin was riding. The parade consisted of ten or fifteen trucks, including pickup trucks and fire trucks. It passed in front of Ms. Ulrich's home and traveled through the neighborhood before entering the park.

Ms. Ulrich testified that her reason for going to the park was to see her cousin when the parade ended. She got to the park before the parade arrived there and bought an iced coffee from a vendor located in one of the pavilions. She stated that there were other vendors in the pavilions and along the outer edge of the walking track, and that she was walking on the grass toward the other vendors when she fell. She explained that she did not walk on the walkway from the pavilion to the walking track because there were a lot of people on the walkway and at the event.

5

The Christmas trees involved in the tree lighting were located in the grassy area inside the walking track. The lighting was an annual event at the park and had been held there for roughly the past fifteen years. No further details about the tree lighting were provided in connection with the summary judgment motion.

There was no admission charge at the park for attending the tree lighting event or for watching the parade. Neither litigant provided any information as to whether the City received any payments from the vendors who sold food, beverages or other products to the public at the event or for allowing the parade to enter the park. Nor was any information provided about whether the City intended to or did derive a profit from any funds it may have collected for the use of the park on the day in question or otherwise. Accordingly, there is no factual support for the plaintiff's contention that the City is not entitled to claim immunity because the park was being used for commercial purposes.

### Application of Law to Undisputed Facts

Based on this Court's interpretation of the meaning of the term "recreational purposes" in § 2795(A)(3), as set forth in *Glorioso*, I cannot agree with the majority's conclusion that the City is entitled to immunity because the plaintiff "was at the park to 'view or enjoy' a 'scenic' sight, i.e., the Christmas lights and parade, events that traditionally take place outdoors." The test under *Glorioso* is not simply whether the activities at the park took place outdoors or traditionally take place outdoors, but whether they constitute activities in which one typically engages in the true outdoors, such as hunting, fishing, camping, hiking, water skiing, skate boarding, or any of the other activities specifically mentioned in the statute. While that list is clearly not exclusive, I do not believe that the viewing of Christmas lights on trees seasonally displayed inside a walking track at a park, watching the end of a truck parade that began outside the park, or meeting up with

6

a relative who rode in the parade, constitute activities in which one typically engages in the true outdoors.

With respect to the statutory reference to "viewing or enjoying historical, archaeological, scenic, or scientific sites," the City presented no evidence in support of its summary judgment motion indicating that there was any particular historical significance to the park or that the park was considered a "scenic site," meaning a scenic location.

I find this case factually distinguishable from the Fourth Circuit case cited by the majority in which recreational use immunity was upheld in a case involving injuries sustained in a public park at French Quarter Fest, an outdoor music festival in New Orleans. *Beal v. Westchester Surplus Lines Ins. Co.*, 21-187 (La. App. 4 Cir. 12/15/21), 334 So.3d 438, *writ denied*, 22-114 (La. 4/5/22), 335 So.3d 838.  In that case, the park in question, Woldenberg Riverfront Park, "was created, in part, for the public to enjoy the scenic views of the Mississippi River," and the festival that the plaintiff was attending when she was injured in that park "feature[d] the natural and architectural aspects of the French Quarter," which is clearly an historical and scenic site.  *Id.* at 446.[3]

I consider the Fourth Circuit's decision in another case, which the majority describes as "not persuasive or controlling," to be far more similar to this case: *Maher v. New Orleans City Park*, 23-416 (La. App. 4 Cir. 12/18/23), 382 So.3d 1045, *aff'd on reh'g* (1/29/24), *writ granted in part, amended on other grounds*, 24-289 (La. 4/30/24), 383 So.3d 919.

In *Maher*, the appellate court reversed the trial court's granting of summary judgment dismissing the plaintiffs' damage claims for injuries Mrs. Maher

---

[3] The festival in *Beal* was "a free event where local musicians perform, and local food/beverage vendors sell their product to the public."  334 So.3d at 446.  There is no indication in the opinion that the plaintiff claimed the property was being used for a commercial purpose due to the presence of food and beverage vendors, and that fact alone would not be determinative of the issue, for the reasons previously stated.

sustained in a fall at City Park in New Orleans during Celebration in the Oaks, "an annual holiday light festival held outdoors." 382 So.3d at 1051. After applying the principles of statutory interpretation set forth in *Glorioso*, the Fourth Circuit in *Maher* initially concluded that the park did not establish that Celebration in the Oaks "is a recreational activity that require[s] the true outdoors, such as fishing, hunting, and camping." *Id.* at 1050. On rehearing, and after considering the *Beal* case discussed above, the court further stated that the park "failed to establish that Celebration in the Oaks is a recreational activity that encompass[es] 'viewing or enjoying historical, archaeological, scenic, or scientific sites.'" *Id.* at 1051.

The majority opinion in this case states that City Park charged a fee for entrance to Celebration in the Oaks. As discussed previously, the fact that an admission fee is charged does not preclude a finding that the park was being used for recreational rather than commercial purposes. § 2795(B)(1). The pivotal inquiry is whether the park's primary objective was to make a profit from the entrance fees or other fees it collected. The affidavit of City Park's CEO, which is referenced in the *Maher* opinion, stated that the limited fees charged by the park for entrance to certain sections of the park or for special events did not cover the cost of operations at the park, and that the park did not generate a profit. 382 So.3d at 1050.

There is no indication in the original opinion or the opinion on rehearing in *Maher* that the court's decision finding summary judgment unwarranted was based on anything other than its conclusions that the park did not establish that the event in question was a recreational activity within the meaning of the immunity statute, La. R.S. 9:2795.

The appellate court in *Maher* declined to address an additional issue presented in the park's motion for summary judgment, which the trial court had not addressed: the park's contention that the plaintiffs could not meet their burden of

8

proving that the park had actual or constructive notice of the alleged defect in the property (a missing drain cover on a catch basin), a prerequisite to recovery against a public body under a different statute, La. R.S. 9:2800. 382 So.3d at 1051. That statute is not at issue in this writ application.

In *Maher*, the Louisiana Supreme Court granted the park's writ application in part, for the sole purpose of amending the appellate court's judgment to remand the case to the district court with instructions to address the notice issue under La. R.S. 9:2800, and denied the writ "in all other respects." 383 So.3d 919. In the writ order, the Supreme Court stated that the other issue presented in the writ application was whether the park "is immune from liability under La. R.S. 9:2795, the Recreational Use Statute[.]" Although a writ denial generally does not indicate the Supreme Court's approval of an appellate court's decision, it may be considered indicative of such approval when the only question presented in the writ application is a legal question concerning the interpretation of legislation. *Kroncke v. Caddo Parish School Board*, 183 So. 86, 88-89 (La. App. 2 Cir. 1938).

It is clear from the Supreme Court's writ order in *Maher* that the issue of the park's immunity from liability under La. R.S. 9:2795 was raised in the writ application and that the court declined to take it up. This carries some weight, in my opinion, and indicates a tacit approval of the result reached by the appellate court on that issue.

*Conclusion*

Each case presenting issues of recreational use immunity must be decided on its own facts. In this case, the event at which the plaintiff was injured was clearly a popular and well-attended annual community gathering to foster enjoyment and celebration of the upcoming Christmas holidays. However, I do not consider the location of the event or the activities taking place there to fall within the scope of

9

the activities or sites for which the Legislature intended to grant immunity from tort liability under the Recreational Use Statutes.

While not identical to this case, the *Maher* case is the case that is most similar to this case, in my view. The majority opinion conflicts with the Fourth Circuit's decision in *Maher*, fails to apply the principles of statutory interpretation set forth by this Court in *Glorioso*, and extends the statutory definition of the term "recreational purposes" in La. R.S. 2795(A)(3) beyond its obvious meaning.

For these reasons, I respectfully dissent.

KERRI ULRICH                                    NO. 25-C-174

VERSUS                                          FIFTH CIRCUIT

CITY OF WESTWEGO                                COURT OF APPEAL

                                                STATE OF LOUISIANA


        **GRAVOIS, J., RESPECTFULLY DISSENTS WITH REASONS
ASSIGNED BY WICKER, J.**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES



FIFTH CIRCUIT
101 DERBIGNY STREET (70053)
POST OFFICE BOX 489
GRETNA, LOUISIANA 70054
www.fifthcircuit.org

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. TRAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **SEPTEMBER 24, 2025** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 25-C-174

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE STEPHEN C. GREFER (DISTRICT JUDGE)
JAMES L. DONOVAN, JR. (RELATOR)          GEORGE B. RECILE (RESPONDENT)

**MAILED**
SEAN M. DONOVAN (RELATOR)                JONATHAN M. LEE (RESPONDENT)
ATTORNEY AT LAW                          ATTORNEY AT LAW
4640 RYE STREET                          ONE GALLERIA BOULEVARD
METAIRIE, LA 70006                       SUITE 1100
                                         METAIRIE, LA 70001